## CRAIG M. DAVIS *v.* EMANUEL MARGOLIS
### (13695)

PETERS, C. J., SHEA, GLASS, COVELLO and F. X. HENNESSY, Js.

Argued April 11—decision released June 19, 1990

*John R. Williams,* with whom, on the brief, was *David B. Bachman,* for the appellant (plaintiff).

*Joseph F. Skelley,* with whom was *Alan Wein,* for the appellee (defendant).

GLASS, J. The principal issue in this appeal is what qualifications are necessary for an expert witness to testify in a legal malpractice case. The plaintiff, Craig M. Davis, brought a legal malpractice action against

the defendant, attorney Emanuel Margolis, alleging, inter alia, that the defendant violated professional duties owed to him as a result of his consultation with the defendant. The trial began on October 18, 1988, in the Superior Court in Hartford, and ended on October 27, 1988, when the court granted the defendant's motion for a directed verdict. The trial court based its decision on the ground that the plaintiff failed to present any expert testimony which, as the plaintiff concedes, was necessary for establishing a prima facie case in his malpractice action. The plaintiff now argues on appeal that the trial court erred: (1) in refusing to permit attorney Jon L. Schoenhorn to testify as an expert witness; and (2) in refusing to allow Schoenhorn to testify as to his experience in the practice of criminal law. We conclude that, in determining whether Schoenhorn was qualified as an expert witness, the trial court should have fully considered his practical experience as it pertained to his knowledge of the standard of care applicable to the defendant's actions in this case.

The jury could reasonably have found the following facts. On June 3, 1981, the plaintiff consulted the defendant with the hope of securing his representation in connection with serious criminal charges[1] that were then pending against him. Although the plaintiff was represented by another attorney at the time, he was dissatisfied with the progress of his case, and thus decided to contact the defendant. The plaintiff's father arranged for an interview at the defendant's office, which both the plaintiff and his father attended. At the time of his interview with the plaintiff, the defendant knew of rumors that the plaintiff was considered a suspect in the murder of James W. Hafner, in which he represented the defendant, Gordon Andrew Burge. The defendant discussed this with the plaintiff, and told him

---

[1] The plaintiff was charged with sexual assault in the first degree, unlawful restraint in the third degree and robbery in the third degree.

that he would be unable to represent him if he discovered that he was involved in the Hafner murder. The plaintiff assured the defendant that he was not involved in that crime. Despite these assurances, during a fifteen minute period when the plaintiff's father had left the room, the defendant grilled the plaintiff about his whereabouts on the day of the Hafner murder.

At the end of the meeting, the defendant offered to represent the plaintiff for a fee of $10,000, that would have covered representation up to, but not including, trial. The plaintiff could not afford to pay that fee, and therefore declined the offer. The plaintiff then continued to be represented by his original attorney, and ultimately pleaded nolo contendere to charges of sexual assault in the first degree, kidnapping in the second degree and robbery in the third degree, for which he received a sentence of ten to twenty years imprisonment.

After the interview with the plaintiff, in the course of the trial of his client Burge, the defendant attempted to introduce evidence that he claimed would have shown that the plaintiff might actually have committed the Hafner murder. Arguing for the admission of the evidence, the defendant stated to the court that he had everything "but a smoking gun" to show that the plaintiff had committed the Hafner murder. The trial court, however, excluded the proffered evidence, and Burge was convicted. The defendant appealed Burge's conviction to this court, and again argued that he had evidence that proved that the plaintiff might have committed the crime of which his client had been convicted. This court thereafter overturned Burge's conviction; *State* v. *Burge,* 195 Conn. 232, 487 A.2d 532 (1985); in part, because of the trial court's exclusion of evidence allegedly inculpating the plaintiff. Id., 252.

After the plaintiff learned of the defendant's remarks in the *Burge* trial, he filed a grievance with the grievance committee for the Stamford-Norwalk judicial district. The grievance committee found that the defendant should have refused to interview the plaintiff, and reprimanded him for having done so. Furthermore, the plaintiff brought this action for legal malpractice, asserting that the defendant's remarks caused him to be subjected to harassment and physical and psychological harm while he was in prison. The plaintiff's complaint alleged that the defendant breached a series of duties owed by an attorney to his client. In particular, the complaint alleged that the defendant breached his duty of loyalty to the plaintiff, and breached his duty to avoid conflicts of interest.[2]

At trial, both sides agreed that, in order to prevail, the plaintiff needed to present expert testimony that the defendant's actions violated an applicable standard of care.[3] In an attempt to satisfy this expert testimony requirement, the plaintiff offered the testimony of Schoenhorn. In his disclosure of expert witness memorandum, the plaintiff stated: "Attorney Schoenhorn will testify to the prevailing standard of care of attorneys in [the defendant's] specialty in the prevailing legal community. He will further testify that [the defendant] by having a confidential discussion protected by the attorney/client relationship with the plaintiff and thereafter representing Mr. Burge in the manner set forth in the complaint failed to exercise the degree of skill and diligence [that] other attorneys in his legal community possess and practice. Attorney Schoenhorn's opinion will be based on his training and experience and

---

[2] An additional claim, alleging a violation of the duty of confidentiality, was withdrawn at trial.

[3] See *Dunham* v. *Dunham*, 204 Conn. 303, 317, 528 A.2d 1123 (1987); *Pearl* v. *Nelson*, 13 Conn. App. 170, 173, 534 A.2d 1257 (1988); *Bent* v. *Green*, 39 Conn. Sup. 416, 420, 466 A.2d 322 (1983).

the practice of law in general and in particular in his practice of criminal law." Moreover, the plaintiff disclosed that Schoenhorn's testimony would be based, in part, on his review of certain files and documents relevant to the case.

Schoenhorn testified that he had extensive experience as a criminal lawyer in Connecticut, and that he had previously testified as an expert witness in a case involving the effectiveness of representation provided by a criminal defense lawyer. In addition, he testified that he had studied legal ethics while in law school and in preparation for the bar examination. The trial court, however, sustained objections to the following questions that the plaintiff's attorney posed to Schoenhorn in an effort to demonstrate Schoenhorn's knowledge of the applicable standard of care: (1) "And can you tell us approximately how many criminal cases you have tried to verdict as of today?"; and (2) "Can you tell us approximately how many [appeals you have argued]?" The plaintiff's attorney argued that the plaintiff was entitled to show Schoenhorn's background in an effort to qualify him as an expert. The trial court held that he could do so only "in regard to the ethical questions." The trial court stated: "What's [Schoenhorn's] background that gives him an expertise in establishing what the standard of care is in the state of Connecticut for lawyers who are consulted by clients, what's their standard of care of loyalty to that client."

The plaintiff's attorney then once again attempted to introduce Schoenhorn's appellate experience to qualify him as an expert. The plaintiff's attorney argued that Schoenhorn had argued many appeals, and stated further: "I'm willing to show that one or more of those appeals dealt with conflict of interest questions in the criminal context. In fact, further, that in the case of State versus Buckley, one of the issues in that appeal which he argued and briefed had to do with whether

a lawyer in the State's Attorney's office who had previously represented Mr. Buckley how he could not have in any way have any part in the prosecution of the matter because of a conflict of interest. And further, the issue arose as to whether the entire office of the State's Attorney would have to be disqualified because of this prior representation. That's what we have here is a case of prior representation. What is the duty owed by a lawyer to somebody who[m] he previously represented in this case, represented for purposes of a consultation and the hiring or maintaining that lawyer to deal with a specific criminal case. [Those are] the additional grounds for bringing out [Schoenhorn's] appellate experience in this matter, your Honor."

In its further colloquy with counsel, the court stated: "Now an expert in my view is a fellow who has more experience than the run-of-the-mill people. He knows a little better than just any lawyer in off the street. He's got some particular expertise in this field of legal ethics. Like in a case we had some years ago, Professor Hazard[4] was brought here . . . to testify in regard to ethics. Well, there's a fellow that's got a background from here to China in ethics, he's taught it, studied it, researched it, testified. What have we got from Mr. Schoenhorn that's not comparable to that, but of that kind? Did he teach law school ethics? Did he have particular training, go to special seminars in ethics? They have them. What did he do that makes him special in this area . . . . I don't care about his background in criminal law. There's a lot of criminal lawyers who are not experts in ethics, there's a lot I'm sure who are. But criminal does not make ethical, per se, just like a lot of lawyers practice criminal law which is heavily involved with the United States Constitution and they don't pay a lot of attention to the United States Con-

---

[4] Geoffrey C. Hazard, Jr., is a Sterling Professor of Law at Yale University.

stitution in their practice, unfortunately. But just being a criminal lawyer doesn't make you a constitutional lawyer. Being a constitutional lawyer doesn't make you a criminal lawyer. Being a criminal lawyer doesn't make you an ethical expert."

The plaintiff's attorney countered: "And I can identify that—particularize that further, because I think it's important what kind of criminal work he's done. And I've indicated that several cases in which he has . . . ." The court then interjected: "But I don't care about that. You see, I care about his training, his background and his education in ethics. The fact that he was in a lot of criminal cases does not mean that he's an ethical expert." The plaintiff's attorney then stated: "Well, that's all that I have on his questions of qualifications as an expert." The plaintiff's attorney then moved to have Schoenhorn qualified as an expert witness. The defendant objected, and the court sustained his objection. The defendant moved for a directed verdict, and the court granted his motion and ordered the members of the jury to return a defendant's verdict, which they did.

The plaintiff argues that the trial court erred both in refusing to permit Schoenhorn to testify as an expert witness and in refusing to allow Schoenhorn to testify as to his experience in the practice of criminal law.[5]

[5] The defendant argues that the plaintiff's claims of error should not be addressed because they were not distinctly raised below. We disagree. First, when the court sustained the defendant's attorney's objections to the plaintiff's attorney's questions regarding Schoenhorn's criminal trial and appellate experience, the plaintiff's attorney clearly noted his exceptions. In addition, when the court sustained the defendant's attorney's objection to Schoenhorn's being qualified as an expert witness, the following colloquy transpired:

"[The Plaintiff's Attorney]: I would move to have Attorney Schoenhorn qualified as an expert witness.

"[The Defendant's Attorney]: I would object, your Honor. There's an objection.

We conclude that the trial court should have fully considered Schoenhorn's practical experience as it pertained to his knowledge of the standard of care applicable to the defendant's actions in this case.

The allegations in the plaintiff's complaint take the form of a classic malpractice action. We have noted: "Malpractice is commonly defined as 'the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . .' Webster, Third New International Dictionary; Black's Law Dictionary (5th Ed. 1979)." *Barnes*

---

"The Court: Objection sustained.

"[The Plaintiff's Attorney]: Well, in light of that I have no further questions for Attorney Schoenhorn.

"The Court: Thank-you, Mr. Schoenhorn.

"The Witness: Thank-you.

"The Court: Next witness please.

"[The Plaintiff's Attorney]: I don't have any more witnesses, your Honor. I rest.

"The Court: The plaintiff rests.

"[The Plaintiff's Attorney]: Your Honor, I take an exception to your ruling on his qualifications as an expert.

"The Court: Too late."

This court has indicated that the rules requiring that an exception be distinctly raised at trial "are not simply formalities." *State* v. *Rogers,* 199 Conn. 453, 461, 508 A.2d 11 (1986); see Practice Book §§ 288, 4185. "They serve to alert the trial court to potential error while there is still time for the court to act. *State* v. *Jones,* 193 Conn. 70, 88, 475 A.2d 1087 (1984); *State* v. *Jackson,* 3 Conn. App. 132, 135, 485 A.2d 934 (1985). Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the judge and the opposing party to trial by ambush. *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d 906 (1982)." *State* v. *Rogers,* supra.

Given that the plaintiff's attorney noted his exception immediately after he rested, it would be difficult to conclude that our addressing these issues would amount to ambushing the trial court and opposing counsel. We are persuaded that the plaintiff's contentions were sufficiently preserved to warrant consideration of his claims before this court.

v. *Schlein,* 192 Conn. 732, 735, 473 A.2d 1221 (1984). As a general rule, for a plaintiff to prevail in a legal malpractice case in Connecticut, he must present expert testimony to establish the standard of proper professional skill or care.[6] *Dunham* v. *Dunham,* 204 Conn. 303, 317, 528 A.2d 1123 (1987); *Pearl* v. *Nelson,* 13 Conn. App. 170, 173, 534 A.2d 1257 (1988); *Bent* v. *Green,* 39 Conn. Sup. 416, 420, 466 A.2d 322 (1983). The requirement of expert testimony in malpractice cases serves to assist lay people, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard. *Fitzmaurice* v. *Flynn,* 167 Conn. 609, 617, 356 A.2d 887 (1975); *Decho* v. *Shutkin,* 144 Conn. 102, 106, 127 A.2d 618 (1956); *Bent* v. *Green,* supra.

The general standard for admissibility of expert testimony in Connecticut is simply that the expert must demonstrate "a special skill or knowledge, beyond the ken of the average juror, that, as properly applied, would be helpful to the determination of an ultimate issue." *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973); see *State* v. *George,* 194 Conn. 361, 373, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985). In malpractice cases, the expert's testimony must be evaluated in terms of its helpfulness to the trier of fact on the specific issues of the standard of care and the alleged breach of that standard. *Fitzmaurice* v. *Flynn,* supra, 616–18. We have held that an expert must show more than a "casual familiarity" with the standards of the specialty in question. Id., 618. In that regard, however, it makes no difference whether the witness' familiarity results from practical or academic experience. Id.;

---

[6] "The only exception to this rule is where there is present such an obvious and gross want of care and skill that the neglect is clear even to a layperson." *Bent* v. *Green,* 39 Conn. Sup. 416, 420, 466 A.2d 322 (1983).

*Bryan* v. *Branford,* 50 Conn. 246, 248 (1882); see 2 R. Mallen & J. Smith, Legal Malpractice (3d Ed. 1989) § 27.17, p. 682. Once the threshold question of usefulness to the jury has been satisfied, any other questions regarding the expert's qualifications properly go to the weight, and not to the admissibility, of his testimony. *Sanderson* v. *Bob's Coaster Corporation,* 133 Conn. 677, 682, 54 A.2d 270 (1947).

In the present case, we conclude that, in order for Schoenhorn to be qualified as an expert witness, he must be found to possess special knowledge beyond that exhibited by every attorney simply as a result of membership in the legal profession. Rather, Schoenhorn must possess special knowledge, that, as properly applied, would be helpful in the determination of the question of whether the defendant's actions were in accordance with the standard of care applicable to attorneys under comparable circumstances. Moreover, Schoenhorn's special knowledge may emanate from a myriad of sources, such as teaching, scholarly writings, study or practical experience.

Thus, while the question of whether a witness is qualified to testify as an expert is largely a matter within the trial judge's discretion; *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73 (1964); we hold that the trial court abused its discretion by refusing to allow the plaintiff to present fully Schoenhorn's practical experience, and in particular, his appellate experience concerning cases that the plaintiff claimed had a bearing on the issue presented in this case. We do not, however, pass judgment on the question of whether Schoenhorn was actually qualified as an expert witness. Rather, we simply conclude that the plaintiff should have been allowed ample opportunity to display Schoenhorn's practical experience in an attempt to show that Schoenhorn possessed special knowledge that would have been helpful to the determination of the question

of whether the defendant's actions were in accordance with the standard of care applicable to attorneys under comparable circumstances.

The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.