[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff William F. Bennett had a twenty-nine year old daughter, Penny Ann Bennett, who was terminally ill and who received both SSI and SSA benefits from the Social Security Administration. The plaintiff had been granted representative payee status, at least with respect to the SSI payment, and was therefore able to pick up his daughter's checks from the post office and deposit them into a representative payee account. On January 11, 1994, the plaintiff was contacted by a postal service police officer who informed the plaintiff that a complaint had been filed against him by his ex-wife. That complaint alleged that the plaintiff had taken his daughter's social security check from his ex-wife's apartment. The postal officer also informed the plaintiff that he might be subject to an arrest warrant.
Thereafter, the plaintiff requested that the defendant, attorney John H. Lindsay, represent him "before the Postal Service particularly because of Penny Ann Bennett's physical suffering because she was gravely ill, and she had been involved with drugs and her social security benefits were taken from her by others, and that the Postal Service should not contact her." What followed appears to have been a series of negotiations between the postal service and the defendant on the plaintiff's behalf. The result of these negotiations was that the plaintiff's daughter was reimbursed the amount of the social security check CT Page 8929 that the plaintiff was accused of intercepting, and the postal service closed the file against the plaintiff.
The plaintiff, however, has filed a three count substituted complaint against the defendant. The complaint is rooted largely in the plaintiff's dissatisfaction with the way that the defendant handled a series of instructions the plaintiff gave the defendant about handling the matter with the postal service. The plaintiff alleges negligence (count one); defamation (count two); and invasion of privacy (count three). The defendant filed an answer and special defenses and has moved for summary judgment.[1]
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. . . ."Thompson and Peck, Inc. v. Division Drywall, Inc., 241 Conn. 370,374, 696 A.2d 326 (1997). Although the Appellate Court in Burkev. Avitabile, 32 Conn. App. 765, 772, 772 n. 9, 630 A.2d 624, cert. denied, 228 Conn. 908, 634 A.2d 297 (1993), discountenanced the filing of a motion for summary judgment to test the legal sufficiency of a complaint and characterized language in Boucher
to the contrary as "anomalous," a more recent appellate opinion, by a panel which included two of the three judges who issuedBurke, has restated that a motion for summary judgment is a proper procedural vehicle to test the legal sufficiency of a complaint. See Drahan v. Board of Education, 42 Conn. App. 480,498 n. 17, 680 A.2d 316, cert. denied, 239 Conn. 921,682 A.2d 1000 (1996). While a party ought not be put out of court for correctable pleading deficiencies, that is not the case here.
 I
The defendant moves for summary judgment as to count one on the ground that count one fails to state a cause of action for "negligence relating to legal representation" and the defendant is therefore entitled to judgment as a matter of law. In support, the defendant argues that the plaintiff's failure to produce expert testimony in a legal malpractice action renders it vulnerable to his motion for summary judgment. The defendant also argues that count one fails to allege wrongdoing on the part of the defendant in any legal capacity because, contrary to the plaintiff's allegation, the defendant had no duty to prevent the postal police officer from contacting the plaintiff's daughter as CT Page 8930 the plaintiff's daughter was not the defendant's client. The defendant also argues that the plaintiff has failed to allege damage to himself.
The plaintiff argues in opposition that he need not provide the expert testimony as he is alleging "negligence, not a deficiency in skill, learning or capability." The plaintiff argues that no attorney-client relationship existed between the plaintiff and the defendant because the defendant did not in fact represent his interests when the defendant negotiated with the postal service. The plaintiff alleges that the defendant failed to represent his interests when the defendant did not prevent the postal service from contacting his daughter. In addition, the plaintiff asserts that the defendant followed the postal service's instructions and not his instructions in the handling of how the plaintiff's daughter was to be reimbursed for the social security check. Specifically, the plaintiff asserts that in two letters, dated January 13, 1994 and February 14, 1994, he requested that the defendant draw a check to the plaintiff's daughter (against funds which the plaintiff had deposited with the defendant) to reimburse the plaintiff's daughter for the social security check and to resolve the matter, but that the defendant did not comply. The plaintiff asserts that he was finally forced to issue a check to his daughter and thereafter request that the defendant refund his deposit. The plaintiff alleges harm to his relationship with his daughter as well as "physical harm."
"The duty owed by an attorney in the representation of a client is the same degree of care, skill and diligence which other attorneys in the same or similar locality and in the same line of practice would have exercised in similar circumstances."Bent v. Green, 39 Conn. Sup. 416, 420, 466 A.2d 322 (1983). "`Malpractice is commonly defined as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. . . ." Webster, Third New International Dictionary; Black's Law Dictionary (5th Ed. 1979).'" Davis v. Margolis, 215 Conn. 408, 416, 576 A.2d 489
(1990).
In a malpractice action the "plaintiff has, at all times, the burden of proving that the defendant had breached his CT Page 8931 professional duty." Snyder v. Pantaleo, 143 Conn. 290, 294,122 A.2d 21 (1956). In order for a plaintiff to prevail in a legal malpractice case in Connecticut, "he must present expert testimony to establish the standard of proper professional skill or care." Davis v. Margolis, supra, 215 Conn. 416. This requirement "serves to assist lay persons, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard." Id., 416. The only exception to this requirement is where there exists such an obvious and gross want of care and skill that the neglect is clear even to a lay person.
The plaintiff's claim that the defendant did not comply with his instructions for the handling of a legal matter is a claim of legal malpractice and expert testimony is necessary to establish the applicable standard of care with respect to the plaintiff's allegations of negligence.
Moreover, "[t]o prove a claim of negligence, the plaintiff must prove by a preponderance of the evidence each of the elements: duty, breach, proximate cause and damages. SeeSantopietro v. New Haven, 239 Conn. 207, 225, 682 A.2d 106
(1996)." Carano v. Moomey, 51 Conn. App. 382, 389, 721 A.2d 1240
(1998). There is no allegation of damages in the first count. Scouring the record, to be solicitous to the pro se plaintiff;Royce v. Westport, 183 Conn. 177, 181 (1981); the only ascertainable complaint of damages appears to be for emotional distress. A claim for emotional distress based on negligence in this context is a particular cause of action. "[I]n order to state such a claim, the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) Parsons v. UnitedTechnologies Corporation, 243 Conn. 66, 88, 700 A.2d 655 (1997); see Montinieri v. Southern New England Telephone Co.,175 Conn. 337, 345, 398 A.2d 1180 (1978); 2 Restatement (Second), Torts § 313 (1965). The plaintiff has not pleaded either element. More importantly, nothing in the voluminous record reflects that the defendant should have realized anything he did involved an unreasonable risk of causing the plaintiff emotional distress and that distress, if it were caused, might result in illness or bodily harm to the plaintiff.
 II
CT Page 8932
The defendant also moves for summary judgment as to count two on the ground that the plaintiff has failed to state a cause of action for defamation in the form of libel because the allegedly defamatory statements were either not published to a third party or were otherwise privileged. The plaintiff opposes the motion by alleging in conclusory fashion that the statements are defamatory.[2]
"`Defamation is made up of the twin torts of libel and slander, the one being, in general, written while the other in general is oral. . . .' W. Prosser Keeton, Torts (5th Ed. 1984) 111, p. 771; see also Charles Parker Co. v. Silver City CrystalCo., 142 Conn. 605, 611-12, 116 A.2d 440 (1955). Defamation is `that which tends to [injure] "reputation" in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him.' W. Prosser W. Keeton, supra, p. 773." Lizotte v. Welker, 45 Conn. Sup. 217,219-20, 709 A.2d 50 (1996), aff'd, 244 Conn. 156, 709 A.2d 1
(1998). "In Connecticut, `[i]t is clear that before a party will be held liable for libel, there must be an unprivileged publication of a false and defamatory statement.'" Id., 221.
The plaintiff's claim of libel is based on (1) correspondence sent from the defendant to the plaintiff in the course of representing the plaintiff in this action; and (2) statements made by the defendant in his motion to dismiss a separate federal civil rights action brought by the plaintiff against the defendant. The allegedly defamatory statements made by the defendant in his letters to the plaintiff were not published
within the meaning of the tort of defamation. "The term `publication' . . . generally refers to the communication of words to a third person." Springdale Donuts, Inc. v. Aetna Casualty Surety Co., 247 Conn. 801, 810, 724 A.2d 1117 (1999) Moreover, the court finds that the allegedly defamatory statements made by the defendant in his motion to dismiss the plaintiff's federal action were privileged. "There is a "long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy.'Circus Circus Hotels, Inc. v. Witherspoon, 99 Nev. 56, 60,657 P.2d 101 (1983)." Petyan v. Ellis, 200 Conn. 243, 245-46,510 A.2d 1337 (1986); see also DeLaurentis v. New Haven,220 Conn. 225, 263, 597 A.2d 807 (1991) ("The common law protects CT Page 8933 allegations in a complaint with an "absolute privilege.'") The defendant's motion for summary judgment as to count two is granted because as a matter of law, the defendant's "statements" were not defamatory or were privileged.
 III
The defendant moves for summary judgment as to the third count on the ground that the plaintiff has failed to state a cause of action for invasion of privacy. The defendant reasons that the plaintiff's allegations do not fall under the false light arm of the invasion of privacy tort because the plaintiff does not allege publication of statements that would place him in a false light before the public. The defendant also observes that the allegedly violative statements were not about private matters because the postal police were investigating a complaint. The plaintiff opposes the motion by re-alleging the allegations which make up his defamation count and concluding that these allegations constitute a claim for invasion of his privacy.
"Our Supreme Court has described the four types of invasion of privacy: `(1) appropriation, for the defendant's benefit or advantage, of the plaintiff's name or likeness; (2) intrusion upon the plaintiff's physical solitude or seclusion; (3) publicity, of a highly objectionable kind, given to private information about the plaintiff even though it is true and no action would lie for defamation; and (4) publicity which places the plaintiff in a false light in the public eye.' Venturi v.Savitt, Inc., 191 Conn. 588, 591 n. 1, 468 A.2d 933 (1983)." (Emphasis added.) Honan v. Dimyan, 52 Conn. App. 123, 132,726 A.2d 613, cert. denied, 249 Conn. 909, ___ A.2d ___ (1999). As a matter of law, the statements on which the plaintiff predicates this cause of action did not invade the plaintiff's physical solitude or seclusion; were not "highly objectionable"; and were not "published" so widely as to have been made "public." The defendant's motion for summary judgment as to count three is granted because there is no genuine issue of material fact and the plaintiff has failed to state a cause of action for invasion of privacy. Once again, however, this is not merely a pleading deficiency. There is nothing in the entire record before the court that suggests that the plaintiff ever could in good faith state and maintain a legally sufficient claim for invasion of privacy.
The defendant's motion for summary judgment is granted as to CT Page 8934 the substituted complaint in its entirety.
BY THE COURT
Bruce L. LevinJudge of the Superior Court