[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The present motion for summary judgment was filed by the defendants in response to the plaintiffs complaint alleging negligence and violations of General Statutes § 42-110b et seq., the Connecticut Unfair Trade Practices Act (CUTPA). On September 15, 1998, the plaintiff. Anita Faulise, filed a four-count complaint naming as defendants Attorney Roger Hisenstein and the law firm of Webber Eisenstein, LLC (the finn). Specifically, count one alleges that Eisenstein committed professional malpractice, and count two alleges that the firm is liable for Eisenstein's negligence as a principal because he was acting within the scope of his capacity as an agent, servant or employee of the firm. Counts three and four allege violations of CUTPA by the respective defendants.
On December 30, 1999, the defendants filed a motion for summary judgment (#116) on the grounds that the plaintiffs complaint contains no competent evidence of malpractice and the defendant Bisenstein's actions did not cause the plaintiffs alleged damages. In support thereof, the defendants filed a memorandum of law, certified depositions of the plaintiff and the apportionment defendant, Sam Faulise,[1] as well as the affidavits of defendant Eisenstein and Demitrios (Jimmy) Psaras. On March 15, 2000, the plaintiff filed a memorandum of opposition to the motion accompanied by the uncertified deposition of the defendant Eisenstein, the defendant Eisenstein's letter in response to a grievance complaint, the certified deposition of Faulise and a letter from the defendant Eisenstein to Faulise regarding the insufficiency of the property securing the loan. On March 31, 2000, the apportionment defendant Faulise filed an objection to the motion for summary judgment supported by his own affidavit. The defendants then filed a reply memorandum to the apportionment defendant's objection on April 5, 2000. In turn, on April 7, 2000, the plaintiff filed a response to the defendants' reply in which she adopted Faulise's affidavit to support her opposition to the motion. The court heard oral arguments at short calendar on May 22, 2000, and now issues this decision. CT Page 13436-r
 FACTS
The pleadings, affidavits and other documents submitted reveal the following undisputed facts. In March of 1997, the plaintiff, through her husband and attorney, Faulise, retained the defendant Eisenstein for the purpose of representation in a loan transaction. The defendant Eisenstein was associated with the defendant law firm of Webber Fisenstein, LLC at all relevant times.
The loan originated in March of 1997, when Faulise was approached by Dimitrios Psaras, also known as Jimmy Psaras, who was seeking a lender for Ralph Abbott, Jr., a member of the Mashantucket Pequot Tribe. The loan for $100,000 was secured by two real estate mortgages on property located in Norwich, Connecticut. At the recommendation of Psaras, Faulise contacted and hired the defendant Eisenstein to check the title of the properties, prepare the documents and represent the lender's interest at the closing. The plaintiff never gave any specific instructions to the defendant Bisenstein, personally or through Faulise, as to what she required or expected of him in his representation, and no agreement was memorialized in writing. Faulise informed the defendant Eisenstein that the loan would be in the plaintiffs name, but he, Faulise, was acting as her agent. The defendant Eisenstein dealt only with Faulise at all relevant times thereafter.
The defendant Eisenstein prepared the various documents and received the certificates of title from Faulise that were prepared by Attorney Alan R. Messier as agreed upon by the parties. Prior to the closing, the defendant Eisenstein notified Faulise, who in turn told the plaintiff that the certificates of title and property appraisals showed there was insufficient equity and/or value in the properties to secure the loan. Additionally, both the plaintiff and Faulise assumed and/or knew that the borrower, Abbott, could not secure a bank loan. Nonetheless, Faulise advised the plaintiff to proceed, and the plaintiff agreed to proceed with the loan, based on Abbott's weekly income of $5000, a weekly distribution of $5000 from casino profits and other business ventures.
On March 19, 1997, the transaction was executed at a closing attended by Faulise, there on behalf of the plaintiff, the defendant Eisenstein and Abbott. Faulise tendered a check in the proper amount and placed no restrictions on the use of the loan proceeds. Throughout all relevant times, the plaintiff never met the defendant Eisenstein, Messrs. Abbott or Psaras and relied exclusively on advice, communications and representations made by Faulise regarding the loan transaction. CT Page 13436-s
Thereafter, Abbott made no payments on the loan and filed for bankruptcy. Faulise, naming himself as debtor, filed a proof of claim for $115,000 in the bankruptcy court. The plaintiff thereafter collected $10,000 from the bankruptcy estate. The properties mortgaged to secure the loan were foreclosed, however, in proceedings brought by one or more encumbrances prior in right to the plaintiff.
In her complaint, the plaintiff alleges that the defendant Eisenstein had prior business dealings with Abbott and Psaras and failed to disclose them to her. She further alleges that prior to representing the plaintiff, the defendant Eisenstein investigated Abbott's credit and concluded that he, himself, would not loan Abbott the money either personally or through his mortgage company, Valley Mortgage, because Abbott was a poor credit risk and found that he had previously discharged substantial debts in bankruptcy. Additionally, defendant Eisenstein allegedly failed to disclose that he previously decided the properties would not secure the loan. The plaintiff also alleges that the defendant Eisenstein represented both the plaintiff and Abbott in the loan transaction and received proceeds from the loan. Finally, the defendant Eisenstein allegedly failed to disclose that Psaras was to collect approximately one-third of the loan proceeds as a finder's fee. The plaintiff maintains that although she had decided to loan Abbott $100,000 prior to even hiring the defendant Eisenstein, she relied on him to protect her interests which included checking the credit worthiness of Abbott even though she did not expect it at the time nor did she ask him to do so. (See Deposition of Anita Faulise, July 13, 1999, pp. 75-76).
The defendants move for summary adjudication as a matter of law on the grounds that (1) the plaintiffs complaint is based entirely on and supported by inadmissible hearsay and (2) even if the defendant committed the acts alleged, those acts were not the proximate cause of her resulting injury. The defendants argue in their supporting memorandum that, prior to this transaction, the defendant Eisenstein never heard of Abbott, never investigated his credit, had no knowledge of his prior filings in bankruptcy and had no prior knowledge of the properties involved in the transaction. The defendants also deny that Psaras ever told the defendant Eisenstein he was expecting to collect proceeds from the loan and the defendant Eisenstein had no knowledge of how the loan proceeds were being used. Additionally, the defendants argue that the defendant Eisenstein was hired to draw up the mortgage papers and other necessary documents and handle the closing and was never asked to act as a financial advisor in the transaction. Also, he represented only the plaintiff at the closing and did not pay Psaras a finders fee for CT Page 13436-t suggesting his services to Faulise. Finally, the defendants argue that the defendant Eisenstein did not share in the proceeds of the loan, either directly and indirectly, rather he was paid only his attorney's fee as evidenced in the HUD-1 statement. (Affidavit of Roger Bisenstein, December 20, 1999, ¶ 10).
In her opposing memorandum, the plaintiff argues that she provided evidence raising genuine issues of material fact. Additionally, she maintains that the defendants were the proximate cause of her injuries because the loan would not have been executed had the defendant Eisenstein properly represented the plaintiff or disclosed his prior relationships with Psaras or Abbott.
 STANDARD
"[Summary] judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49; see alsoDowling, Sr. v. Finley Associates, Inc., 248 Conn. 364, 369-70,727 A.2d 1245 (1999). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Sherwood v. Danbury Hospital, 252 Conn. 193, 201,746 A.2d 730 (2000).
As the party moving for summary judgment, the defendant "has the burden of showing the absence of any genuine issue of material facts . . .";Ruddock v. Burrowes, 243 Conn. 569, 573-74, 706 A.2d 967 (1998); and supporting its motion with documentation, including affidavits. SeeHeymen Associates No. 1 v. Insurance Co. of Pennsylvania, 231 Conn. 756,796, 653 A.2d 122 (1995); see also Practice Book § 17-45. "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with [concrete] evidence [and counteraffidavits] disclosing the existence of such an issue." Haeschev. Kissner, 229 Conn. 213, 217, 640 A.2d 89 (1994). "Demonstrating a genuine issue [of material fact] requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . ." (Citations omitted; internal quotation marks omitted.) New Milford Savings Bank v.Roina, 38 Conn. App. 240, 244, 659 A.2d 1226, cert. denied, 235 Conn. 915,665 A.2d 609 (1995). "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." Home Ins.Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202-03, 663 A.2d 1001
CT Page 13436-u (1995); see also Practice Book § 17-46. "Hearsay statements[2] are insufficient to contradict facts offered by the moving party . . . and if an affidavit contains inadmissible evidence it will be disregarded. 2830Whitney Avenue Corp. v. Heritage Canal Development Associates, Inc.,33 Conn. App. 563, 568-69, 636 A.2d 1377 (1994); see also Fogerty v.Rashaw, 193 Conn. 442, 444, 476 A.2d 582 (1984) (hearsay cannot be relied upon to support a motion for summary judgment).
Moreover, "[a] response to a question propounded in a deposition is not a judicial admission. General Statutes § 52-200." Esposito v.Wethered, 4 Conn. App. 641, 645, 496 A.2d 222 (1985) (disclosure under oath for purposes of a deposition are not conclusive where two depositions regarding a material fact are in conflict and at issue). Some Superior Court decisions hold that "reliance on deposition testimony on a motion for summary judgment is generally inappropriate." (Internal quotation marks omitted.) Kroll v. Sebastian, Superior Court, judicial district of New London, Docket No. 545977 (March 15, 1999, Martin, J.). Nonetheless, "the Superior Court has been split as to whether deposition testimony, either uncertified or certified, may be considered for the purposes of a motion for summary judgment"; Schratwieser v. HartfordCasualty Ins, Co., 44 Conn. App. 754, 759 n. 1, 692 A.2d 1283, cert. denied, 241 Conn. 915, 696 A.2d 340 (1997); and the Appellate Court has not determined such consideration by a trial court to be improper. See id.
 REASONING
First, the court will address the issue of causation as it is dispositive to the present motion and, therefore, the court need not address the other issues raised by the movant. "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." RK Constructors, Inc. v. FuscoCorp., 231 Conn. 381, 384, 650 A.2d 153 (1994). Specifically, "[the] four essential elements to a malpractice action . . . are: (1) the defendant must have a duty to conform to a particular standard of conduct for the plaintiffs protection; (2) the defendant must have failed to measure up to that standard; (3) the plaintiff must suffer actual injury; and (4) the defendant's conduct must be the cause of the plaintiffs injury."LeBieniec v. Baker, 11 Conn. App. 199, 202-03, 526 A.2d 1341 (1987).
The issue of causation is generally a question reserved for the trier of fact. See Abrahams v. Young Rubicam, Inc., 240 Conn. 300, 307,692 A.2d 709 (1997). "[T]he issue becomes one of law when the mind of a fair and reasonable person could reach only one conclusion, and summary CT Page 13436-v judgment may be granted based on a failure to establish causation." Id.
"[A]s a general rule, for a plaintiff to prevail in a legal malpractice action in Connecticut, [s]he must present expert testimony to establish the standard of proper professional skill or care." Davis v. Margolis,215 Conn. 408, 416, 576 A.2d 489 (1990); Paul v. Gordon, 58 Conn. App. 724,727, ___ A.2d ___ (2000). In the context of a motion for summary judgment, our courts have held that expert testimony is necessary to establish the applicable standard of care in the context of legal malpractice. See, e.g., Somers Associates v. Hussey, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 555986 (April 11, 1997, Langenbach, J.) (court entered summary judgment for plaintiff on defendant's counterclaim sounding in legal malpractice but providing no expert testimony to sustain the allegations); Digioia v.Greenberg, Superior Court, judicial district of New Haven at New Haven, Docket No. 350406 (October 11, 1995, Martin, J.) (court granted defendant summary judgment because the plaintiff failed to establish the applicable standard of care through expert testimony); Casnarin v. Zippel, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 526299 (December 5, 1995, Freed, J.) (judgment entered for defendant on legal malpractice action where the plaintiff failed to show a breach of a standard of care or causation by expert testimony). "The testimony is necessary to establish (1) that a breach of the professional standard of care has occurred, and (2) that the breach was the proximate cause of the injuries suffered by the plaintiff." (Internal quotation marks omitted.)Solomon v. Levett, 30 Conn. App. 125, 128, 618 A.2d 1389 (1993).
In affirming a directed verdict for the defendant in a legal malpractice case, the Appellate Court found that "the trial court adhered to existing precedent in directing a verdict in favor of the defendant when the plaintiff failed to produce expert testimony to demonstrate that the defendant's breach proximately caused her injuries." Solomon v.Levett, supra, 30 Conn. App. 128; see generally Sherwood v. DanburyHospital, supra, 252 Conn. 201 (the test for granting summary judgment is whether a party would be entitled to a directed verdict on the same facts). Although "the trial court found that [the plaintiff provided] sufficient evidence . . . to allow the jury to find that the breach of [the] [R]ules [of Professional Conduct] constituted conduct that fell below the requisite standard of care of an attorney . . . the plaintiff failed to produce expert testimony to prove that the defendant's breach caused her to suffer damages." Id., 126.
The defendants argue that their actions, as alleged in the complaint, did not cause the plaintiffs damage. Here, as in Solomon, the plaintiff CT Page 13436-w has failed to produce expert testimony to establish that the defendants' alleged breach caused her damages. Therefore, even if the court were to find that the defendant's representation was below the requisite standard of care, in the absence of expert testimony, the plaintiff cannot establish that the defendants' breach was the proximate cause of the injuries suffered by the plaintiff. See Solomon v. Levett, supra,30 Conn. App. 128; see generally Bennett v. Lindsay, Superior Court, judicial district of New Haven, Docket No. 389401 (July 6, 1999, Levin,J.) (in a malpractice action the plaintiff has, at all times, the burden of proving that the defendant had breached his professional duty); Lunnv. Cummings Lockwood, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 545564 (June 5, 1998, Teller, J.), aff'd, 56 Conn. App. 363, 743 A.2d 653 (2000) (the plaintiff must prove that the attorney's negligence was the proximate cause of injury to the plaintiff).
Furthermore, the facts presented do not fall within the only exception to the rule requiring expert testimony because there is not "such an obvious and gross want of care or skill that the neglect is clear even to a layperson." Davis v. Margolis, 215 Conn. 408, 416 n. 6, 576 A.2d 489
(1990); see also Paul v. Gordon, supra, 58 Conn. App. 727-28 (the Appellate Court held that where an attorney failed to take any action to protect the interest of his clients resulting in their eviction from leased premises for failure to appear in court, the conduct fell within the exception). "Whether the exception applies is a question of law for the court." Digioia v. Greenber, supra, Superior Court, Docket No. 350406. Here, expert testimony would be necessary to establish the applicable standard of care and specifically whether the breach was the proximate cause of the injuries suffered by the plaintiff. In the absence of such expert testimony, the defendants' motion for summary judgment is granted.
Furthermore, the evidence submitted by the plaintiff does not sufficiently establish a causal connection between the defendant Eisenstein's failure to disclose the information and the failure of the loan transaction and resulting pecuniary injuries. There is no written agreement evidencing the duties of defendant Eisenstein. Further, all of the statements offered by the plaintiff are based on the subjective expectations of herself and Faulise. The plaintiff also offers insufficient evidence to establish that, had she known of these alleged prior business relations and Abbott's previous financial difficulties, she would not have executed the loan. The only evidence suggesting that Faulise and the plaintiff might have acted differently are self-serving statements made in their respective affidavits and depositions, CT Page 13436-x statements which are not based on first-hand knowledge but rather on representations made by Psaras, a third-party declarant. The plaintiff states in her deposition that she has no direct knowledge the defendant Eisenstein misled her or Faulise and further states that her allegations are completely based on "conversations that [she] had with Mr. Faulise" regarding information he heard from Psaras. (See Deposition of Anita Faulise, p. 106). These statements are hearsay and cannot be relied upon to support a motion for summary judgment. See Fogerty v. Rashaw, supra,193 Conn. 444; 2830 Whitney Avenue Corp. v. Heritage Canal DevelopmentAssociates, Inc., supra, 33 Conn. App. 568-69. She also states that had she known of Abbott's prior bankruptcy filings, she would have taken this information into account, but denied having ever said that she would "never" have lent him his money. (See Deposition of Anita Faulise, pp. 108-09).
Faulise represented in his deposition that he would not have gone forward with the transaction had he known any of the information that Psaras allegedly told him about his prior relationship with the defendant Eisenstein. (See Exhibit 3, Deposition of Sam Faulise, Vol. II, February 3, 2000, pp. 59-60). These statements are based on information that Psaras allegedly told Faulise, of which Faulise has no first-hand knowledge. Also, the statement is self-serving in that Faulise is the apportionment defendant in this action, and this speculative conclusion relieves him of possible liability as one of the plaintiffs attorneys in the transaction. Accordingly, this evidence offered by the plaintiff is disregarded because the plaintiff and Faulise have no first-hand knowledge of the information upon which they make their speculations, the information is hearsay and, therefore, inadmissible evidence and the statements are self-serving. See Practice Book § 17-46; 2830 WhitneyAve. v. Heritage Canal Development Associates, Inc., supra,33 Conn. App. 568-69; see also Fogerty v. Rashaw, supra, 193 Conn. 444
(hearsay cannot be relied upon to support a motion for summary judgment). Accordingly, the plaintiff offers insufficient evidence to establish a causal connection between the defendant's failure to disclose the information and the failure of the loan transaction and resulting pecuniary injuries.
 CONCLUSION
Accordingly, in the absence of expert testimony or sufficient evidence establishing that the defendants' acts were the proximate cause of the plaintiffs injury, the defendants' motion for summary judgment is granted. CT Page 13436-y
BY THE COURT
Hon. Andre M. Kocay, J.