[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTIONS TO STRIKE
This action arises out of the death of Tatiana Pedro, which is alleged to be the result of the defendants' deviation from the applicable standard of care as medical providers. The plaintiffs' complaint alleges that on or about June 30, 1999, the plaintiff, Joana Pedro, under the defendants' care and supervision, delivered twin daughters. One daughter, Liliana Pedro, is alive today. The other daughter, Tatiana Pedro, was born without any signs of life.
The plaintiffs, Joana Pedro, individually, and Victor Pedro as Administrator of the Estate of Tatiana Pedro, filed an eight count revised complaint against the defendants, St. Mary's Hospital Corp., Peter Hoden, M.D., John Lewis, M.D., Clare Ventre, M.D., and The Center for Women's Health in Connecticut, P.C. The counts relevant to the motions to strike presently before the court are counts one through four, all of which allege malpractice. Count one is asserted against St. Mary's Hospital Corp. (St. Mary's). Count two is asserted against Peter Hoden, M.D. (Hoden) and The Center for Women's Health In Connecticut, P.C. (The Center). Count three is asserted against John Lewis, M.D. (Lewis) and The Center. Count four is asserted against Clare Ventre, M.D. (Ventre) and The Center.
The defendant, St. Mary's, has filed a motion to strike count one of the plaintiffs' complaint on the ground that count one is legally insufficient because Connecticut does not recognize a cause of action for loss of filial consortium. The defendants, Lewis, Ventre, and The Center have filed a motion to strike counts two, three and four of the plaintiffs' revised complaint on the ground that Connecticut does not recognize a cause of action for loss of filial consortium.[1]
 DISCUSSION
CT Page 15526
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegation of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). In ruling on a motion to strike, the trial court is to "determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v.Middlesex Mutual Assurance Co., 242 Conn. 375, 378, 698 A.2d 859 (1997). The court must "construe the complaint in the manner most favorable to sustaining its legal sufficiency." Lombard v. Edward J. Peters, Jr.,P.C., 252 Conn. 623, 626, 749 A.2d 630 (2000). "What is necessarily implied [in an allegation] need not be expressly alleged." Gazo v. Cityof Stamford, 255 Conn. 245, 260, 765 A.2d 505 (2001). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc.v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992).
St. Mary's, Lewis, Ventre, and The Center argue that Connecticut does not recognize a claim for a parent's loss of a child's consortium. Furthermore, they argue that the wrongful death statute provides the exclusive remedy for the plaintiffs' claims. The plaintiffs argue that counts one, two, three, and four do not set forth a cause of action for loss of consortium, but instead set forth a cause of action on behalf of Joana Pedro for medical negligence. Because this court finds that Joana Pedro has pled a medical malpractice claim relating directly to her as opposed to a derivative claim for loss of consortium, the motions to strike are denied.
 A. Loss of Filial Consortium
"Loss of consortium is a derivative cause of action, meaning that it is dependent on the legal existence of the predicate action." Musorofiti v.Vlcek, 65 Conn. App. 365, 375, ___ A.2d ___ (2001).
Notwithstanding its recognition of a claim for loss of spousal consortium, the Supreme Court declines to recognize "a derivative cause of action for loss of parental consortium by a minor child." Mendillo v.Board of Education, 246 Conn. 456, 461, 717 A.2d 1177 (1998). InMendillo, the Court expressed its reluctance to recognize a cause of action in tort based on third party liability absent special public policy considerations favoring recovery. Mendillo v. Board of Education,
supra, 246 Conn. 482. The Court noted that "the scope of the tortfeasor's third party liability, measured only by pure rules of foreseeability could lead to unlimited liability." (Internal quotation marks omitted.) Id. CT Page 15527
Furthermore, "[n]o appellate court case has yet addressed squarely the issue of whether, under any circumstances, a cause of action for the loss of filial consortium lies." Mahoney v. Lensink, 17 Conn. App. 130, 141
n. 7, 550 A.2d 1088 (1988), rev'd on other grounds, 213 Conn. 548,569 A.2d 518 (1990). The Superior Courts are split as to whether a cause of action for filial consortium exists. The majority of Superior Court cases, however, hold that Connecticut does not recognize a cause of action for loss of filial consortium.[2] This court declined to recognize a cause of action for filial consortium in Fischer v. Dunn,
Superior Court, judicial district of Waterbury, Docket No. 160378 (August 14, 2001, Rogers, J.). In Fischer, this court based its holding on the reasoning set forth in Mendillo and indicated that the plaintiffs "failed to identify any policy reasons why the [Mendillo] analysis should be [different] when the parent is suing for loss of consortium regarding their child."
Unlike Fischer, the present case does not involve a purely derivative cause of action such as filial consortium. Instead, counts one through four allege a direct cause of action for medical malpractice against the defendants for Joana Pedro's alleged injuries.[3] The present case is also distinguishable from a situation of bystander emotional distress, for which this court holds that there is no cause of action in the medical malpractice context.[4] In this case, the plaintiff is alleging that a tort was directly performed upon her and that as a result she suffered injuries. She is not claiming that solely as a result of a tort being performed upon another the court should find that third party liability is owed to her.
"Where a child remains a part of the mother's physical being, concerns for the child's welfare during delivery procedures are concerns for the mother's well being. . . . In such a circumstance . . . there are two within the zone of danger and the doctor owes a duty to each. . . . [T]he plaintiff-mother [is] not a mere eyewitness or bystander to an injury caused by another but rather she [is] the one to whom a duty was directly owed by the obstetricians and the one who was directly injured by the physicians' breach of that duty." (Citation omitted; internal quotations marks omitted.) Johnson v. Day Kimball Hospital, Superior Court, judicial district of Windham at Putnam, Docket No. 063592 (January 24, 2001,Foley, J.).
In Chabot v. Day Kimball Hospital, Superior Court, judicial district of Windham at Putnam, Docket No. 053562, (February 27, 1997, Sferrazza,J.), a mother pregnant with twins was under the care of the defendant's employees and her obstetrician during labor. She delivered one healthy twin, but encountered difficulty delivering the other twin and alleged that the defendants' inappropriate care contributed to the death of that CT Page 15528 twin. The court noted that the complaint, pertaining to the mother's psychological and emotional distress collateral to medical malpractice, made no differentiation between the emotional suffering sustained as a result of the malpractice as to the mother and the malpractice as to the child. The court found that the emotional distress, to the extent that distress flowed from the medical malpractice perpetrated upon the mother, was compensable because the mother was not a bystander.
Hence, the allegations contained in counts one through four of the plaintiffs' revised complaint do not constitute derivative causes of action. This court now turns to the requisite elements of a cause of action sounding in medical malpractice.
 B. Medical Malpractice
"Malpractice is commonly defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. . . ." (Internal quotation marks omitted.) Davis v. Margolis, 215 Conn. 408,415, 576 A.2d 489 (1990). The relevant elements to a medical malpractice claim are: "(1) the defendant must have a duty to conform to a particular standard of conduct for the plaintiff's protection; (2) the defendant must have failed to measure up to that standard; (3) the plaintiff must suffer actual injury; and (4) the defendant's conduct must be the cause of the plaintiff's injury." Labieniec v. Baker, 11 Conn. App. 199, 202,526 A.2d 1341 (1987).
Counts one through four of the plaintiffs' revised complaint all allege the following: that the defendants were acting in their capacity as medical professionals; the defendants deviated from their standard of care in delivering Joana Pedro's twin children; Joana Pedro's child, Tatiana Pedro, would have been born alive if the defendants had not deviated from the appropriate standard of care; and as a result of the defendants' deviation from the applicable standard of care, Joana sustained emotional pain and upset due to the loss of her daughter. In viewing the complaint in the manner most favorable to sustaining its legal sufficiency, the plaintiff has alleged sufficient facts to sustain a cause of action for medical malpractice.
Accordingly, the defendants' motions to strike counts one, two, three and four of the plaintiffs' amended complaint are denied.
CHASE T. ROGERS SUPERIOR COURT CT Page 15529