RICHARD YOUNG *v.* ARNOLD RUTKIN
(AC 23239)

Schaller, Flynn and West, Js.

Argued May 30—officially released September 9, 2003

*John R. Williams*, for the appellant (plaintiff).

*Paul E. Pollock*, for the appellee (defendant).

*Opinion*

WEST, J. The plaintiff, Richard Young, appeals from the judgment of the trial court directing a verdict for

the defendant, Arnold Rutkin, an attorney, in this legal malpractice action. The plaintiff claims that the court improperly (1) held that his expert witnesses were not qualified to offer opinion evidence and (2) directed the verdict when the evidence was sufficient for submission to the jury even in the absence of expert testimony. We disagree and affirm the judgment of the trial court.

The following facts are necessary to our resolution of the plaintiff's appeal. The defendant initially represented the plaintiff in divorce proceedings in 1989. Pursuant to the settlement of that divorce action, the plaintiff agreed to pay his former wife $13,000 per month. The settlement agreement also provided that the plaintiff's former wife and the couple's children would have the use of the marital home, but that in the event of a sale, the proceeds would be divided evenly between the plaintiff and his former wife. The settlement agreement also provided that in the event that the wife married or cohabited, alimony and certain other payments would cease and the marital home would be sold.

In 1993, the defendant represented the plaintiff in seeking a modification of the plaintiff's financial obligations to his former wife. Following settlement discussions between the parties to the divorce, they agreed on a modification of the divorce settlement that reduced the plaintiff's financial obligations to $30,000 per year. In exchange for that reduction, the plaintiff agreed to surrender his one-half interest in the marital home and expunge from the settlement agreement the cohabitation clause governing the use of the house.

The parties also negotiated an agreement concerning the use of an outstanding balance of a home equity line of credit that the plaintiff previously had taken out on the marital home. Of the original $150,000 equity line, $90,000 had been drawn on the account prior to the 1993

negotiations. The modification agreement provided that the plaintiff's former wife could use the remaining $60,000 balance of the credit line for "any reasonable purpose for her or [the parties'] children's needs . . . ." The plaintiff would remain responsible for paying the interest on that loan and was obligated to repay any outstanding balance on the loan in the event that the house was sold.

During the negotiations leading to the modification agreement, the defendant, at the plaintiff's suggestion, inquired of the plaintiff's former wife whether she was dating anybody or was planning on having anyone move into the house in the immediate future. According to the defendant, the attorney representing the plaintiff's former wife replied that she was seeing a few people, one more than the others, but that she had no plans to cohabit or to remarry at that time. The plaintiff remained somewhat apprehensive, realizing that if his former wife moved someone into the house in the near future, the terms of the proposed modification agreement would cost him more than he saved. According to the plaintiff, however, the defendant assured him that the modification could be overturned on the ground of fraud in the event that the representations made by the former wife proved false.

Three weeks after finalizing the modification agreement, the plaintiff's former wife informed the plaintiff that she was living with someone. Three months after that, she wrote to the plaintiff to inform him that she had used the remainder of the available funds from the home equity loan.

Following those revelations, the plaintiff filed a motion to set aside the modification agreement on the basis of fraud or misrepresentation. At the hearing on that motion, the plaintiff testified that a representation was made that his former wife was seeing several peo-

ple, one more than the others, but that she had no plans to cohabit. The plaintiff testified that he relied on that representation in agreeing to the proposed modification of the settlement agreement. The attorney for the plaintiff's former wife also testified at the hearing. He indicated that he had stated at the time of the modification agreement that his client had been seeing only one person. Faced with that contrary testimony at the hearing and the absence of any writing memorializing the representations that actually had been made, the attorney representing the plaintiff in the fraud action, David J. Scully, recommended that the plaintiff settle the matter. That decision was founded on Scully's belief that the absence of concrete proof would make it impossible to satisfy the burden of proof with respect to the alleged fraud. The parties did subsequently settle the fraud action.

The plaintiff then filed an action against the defendant, alleging that the defendant had been negligent in his representation during the negotiations leading to the modification of the divorce settlement. Specifically, the plaintiff claimed that he had relied on the defendant's oral representation that the modification agreement could be overturned in court on the ground of fraud in the event that the plaintiff's former wife had misrepresented her intentions and did cohabit or remarry within a brief period of time following the modification. The defendant failed, however, to document the representations of opposing counsel regarding the future plans of the plaintiff's former wife. The plaintiff argued that that failure to obtain written assurances made it impossible to prevail in the fraud case.

The legal malpractice case was tried to the jury. Following the close of evidence, the defendant sought a directed verdict, and the motion was granted by the court. This appeal followed. Additional facts will be set forth as necessary.

I

We first address the claim that the court improperly ruled that the plaintiff's expert witnesses were not qualified to offer opinion evidence regarding the relevant standard of care.

"[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *Henry*, 72 Conn. App. 640, 654, 805 A.2d 823, cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002).

Section 7-2 of the Connecticut Code of Evidence provides that "[a] witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue." In *Davis* v. *Margolis*, 215 Conn. 408, 576 A.2d 489 (1990), our Supreme Court discussed the contours of the qualification of experts as applicable specifically to attorneys. The court held that to be qualified as an expert witness in a particular matter, an attorney "must be found to possess special knowledge beyond that exhibited by every attorney simply as a result of membership in the legal profession." Id., 417. The court stressed, however, that such special knowledge properly may "emanate from [any of] a myriad of sources, such as teaching, scholarly writings, study or practical

experience." Id.[1] Nevertheless, the standard regarding expert qualification requires more than casual familiarity with the area of law about which the witness seeks to testify. Id., 416.

The following additional facts are necessary for our resolution of the plaintiff's claim. The plaintiff called Scully as an expert witness. Scully had represented the plaintiff in his fraud action against the plaintiff's former wife. During direct examination, Scully comprehensively testified regarding the fraud proceedings. The defendant objected, however, when the plaintiff inquired whether Scully had a professional opinion regarding the defendant's failure to document the representations that allegedly had been made regarding the modification agreement. The court allowed the witness to answer that he did have such an opinion. The defendant then renewed his objection as to the witness stating that opinion. The court then excused the jury and allowed both parties to question the witness as to his experience in the area of domestic and family law.

During that examination, Scully stated that he had attended a full or half-day seminar devoted to family law in 1986 and had attended a half-day family law seminar two months prior to his testimony. He stated that family law matters constituted between 1 percent and 5 percent of his total work and that he had no experience dealing with contested cases involving cohabitation clauses. In fact, he appeared to be unaware that there is a statute governing cohabitation issues. General Statutes § 46b-86 (b). He also stated that he did not subscribe to any particular family law journals,

---

[1] The actual question before the court in *Davis* involved a claim that the trial court improperly had refused to allow the plaintiff to present the proffered expert's practical experience. The court did not, therefore, reach the merits of whether the attorney witness in question was actually qualified to testify as an expert witness. *Davis* v. *Margolis*, supra, 215 Conn. 417–18.

although he would read whatever recently published family law cases "caught his eye."

The court sustained the defendant's objection on the basis of its finding that although the witness was an experienced civil litigator who had handled some family matters, he did not have sufficient experience in the practice of family law to render an expert opinion as to the standard of care applicable to the defendant's performance in negotiating the modification agreement.

In an effort to salvage his witness, the plaintiff argued that the essence of the matter being litigated, the failure to memorialize the representations of the opposing attorney during the settlement modification negotiations, concerned general principles of contract negotiation and did not necessarily implicate family specific law. The defendant countered that the pressures, and the attendant negotiation and settlement strategies, in a family and matrimonial context are unique and that an attorney could not understand those pressures or judge an attorney's conduct under such circumstances without the relevant experience in the field. The court rejected the plaintiff's argument.

On the basis of the court's ruling with respect to Scully's lack of qualification to testify as an expert witness, the plaintiff chose not to call another anticipated witness, attorney Jacob Wieselman, whom the plaintiff characterized as an expert in negotiations and deals, but who, the plaintiff conceded, had no experience in divorce matters.

We recognize that attorneys in Connecticut do not have formal specialties involving additional licensing requirements beyond that necessary for the practice of law generally. Nevertheless, we recognize that the relevant experience necessary to qualify one as an expert witness in a particular legal malpractice action is not shared equally by every member of the bar. Our

Supreme Court has expressly stated that to qualify as an expert in a particular matter, an attorney "must be found to possess special knowledge beyond that exhibited by every attorney simply as a result of membership in the legal profession. Rather, [an attorney] must possess special knowledge, that, as properly applied, would be helpful in the determination of the question of whether the defendant's actions were in accordance with the standard of care applicable to attorneys *under comparable circumstances*." (Emphasis added.) Id., 417. "[A]n expert must show more than a 'casual familiarity' with the standards of the *specialty* in question." (Emphasis added.) Id., 416.

In the present case, despite his eleventh-hour attempt to characterize the issue before the court as a simple contract matter, the plaintiff explicitly recognized, in his disclosure of expert witnesses and in his examination of Scully, that the question before the court specifically involved the standard of care applicable in a matrimonial matter. Although it is clear that Scully had some experience handling family and matrimonial matters, the court concluded that that experience was not sufficient to satisfy the minimum quantum necessary to qualify him to render an expert opinion. We stress, however, that to qualify as an expert in particular matter, a witness in a legal malpractice case need not formally belong to, or regularly practice in, any particular branch of practice. The relevant inquiry does not concern the superficial label that may be attached to the witness' practice, but rather, whether the proposed expert knows what the applicable standard of care is and can evaluate the defendant's conduct against that standard. See *Fitzmaurice* v. *Flynn*, 167 Conn. 609, 617–18, 356 A.2d 887 (1975). It is the relevant knowledge that the witness possesses, not the source of that knowledge, that determines eligibility to provide expert testimony. *Davis* v. *Margolis*, supra, 215 Conn. 417; see also

*Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 189, 646 A.2d 195 (1994) (expert's testimony to be evaluated in terms of helpfulness to trier of fact on specific issues of standard of care, breach of that standard). On the basis of the evidence presented, the court properly could have concluded that notwithstanding his alleged expertise in contract law, Scully's sparse academic and practical experience in the area of family law did not establish any more than casual familiarity with the relevant professional standard of care.

We conclude that the court did not abuse its discretion in ruling that the plaintiff's proffered witness was not qualified to provide expert testimony on the applicable standard of care.

## II

We next address the plaintiff's claim that the evidence was sufficient for submission to the jury even in the absence of the expert testimony. We disagree.

"The standards for reviewing a challenge to a directed verdict are well known. Generally, litigants have a constitutional right to have factual issues resolved by the jury. . . . Directed verdicts [therefore] are historically not favored and can be upheld on appeal only when the jury could not have reasonably and legally reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Citations omitted; internal quotation marks omitted.) *Vona* v. *Lerner*, 72 Conn. App. 179, 186–87, 804 A.2d 1018 (2002), cert. denied, 262 Conn. 938, 815 A.2d 138 (2003).

Generally, for a plaintiff to prevail in a legal malpractice action, expert testimony is necessary to establish

the standard of proper professional skill or care. *Davis* v. *Margolis,* supra, 215 Conn. 416; *Vona* v. *Lerner,* supra, 72 Conn. App. 188; *Pearl* v. *Nelson,* 13 Conn. App. 170, 173, 534 A.2d 1257 (1988). "The requirement of expert testimony in malpractice cases serves to assist lay people, such as members of the jury . . . to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard." *Davis* v. *Margolis,* supra, 416.

In the present case, the plaintiff unsuccessfully attempted to qualify Scully as an expert for the purpose of providing an opinion as to the proper standard of care. In light of the court's unfavorable ruling on Scully's qualifications, the plaintiff chose not to call a second anticipated expert witness whom the plaintiff conceded would not be able to meet the court's test for expertise. As a result, the plaintiff offered no expert testimony regarding the proper standard of care applicable to an attorney conducting a renegotiation of a divorce property settlement. We conclude that in the absence of expert testimony as to the proper standard of care, the court properly directed a verdict for the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.