KAREN GLASER ET AL. *v.* PULLMAN AND
COMLEY, LLC, ET AL.
(AC 24445)

Bishop, McLachlan and Dupont, Js.

Argued January 5—officially released April 26, 2005

*Kenneth A. Votre,* with whom was *Keith P. Sturges,* for the appellants (plaintiffs).

*David P. Atkins*, with whom, on the brief, were *David P. Friedman* and *Marcy Tench Stovall*, for the appellees (defendants).

*Opinion*

DUPONT, J. In this legal malpractice action, the plaintiffs, Karen Glaser, KLO Associates, Inc., and Glaser Realty Associates, LLC (Glaser Realty), appeal from the judgment of the trial court rendered after the jury's verdict in favor of the defendants, the law firm of Pullman & Comley, LLC (law firm), and Ronald C. Sharp, one of its members, on the plaintiffs' complaint and in favor of the law firm on its counterclaim. The sole issue on appeal is whether the court properly precluded the testimony of one of the plaintiffs' properly disclosed expert witnesses. We affirm the judgment of the trial court.

## I

## PROCEDURAL AND FACTUAL BACKGROUND

The following factual and procedural history is relevant to our resolution of the plaintiffs' claim. This case arises from the plaintiffs' attempted purchase in 1995 of a commercial building in Wilton for use in the plaintiffs' marketing business. Sharp, having represented the plaintiffs in various matters for several years, undertook to represent them in connection with the purchase. In their one count substituted complaint, the plaintiffs sought damages from the defendants in connection with the defendants' representation of the plaintiffs, for lost business opportunities, relocation expenses, labor expenses and other related costs. Their claim for damages was based on alleged acts of legal malpractice.

In late June or early July, 1995, the plaintiffs located a property in Wilton that they considered appropriate for their needs. In July, 1995, counsel for the owner-seller of the property provided the defendants with a

proposed real estate purchase and sale agreement, to which certain environmental reports were attached. The reports contained evidence of lead contamination on the property. In that same month, the real estate agent representing the owner-seller of the property provided an environmental affidavit to both the plaintiffs and to Sharp, which represented that there was no contamination on the property.

On August 16, 1995, Glaser Realty entered into a written purchase and sale agreement for the property. The agreement contained several contingencies, including final approval of a conditional commitment previously issued by Glaser Realty's lender to provide mortgage financing for the purchase of the property. The plaintiffs and the seller ultimately agreed to a closing date of September 29, 1995.

The plaintiffs' lender withdrew its conditional commitment to provide financing for the purchase of the property when it learned of lead contamination on the property. Without the necessary financing, the plaintiffs canceled the transaction. In their operative complaint, the plaintiffs alleged that the defendants had not adequately alerted them to the existence and contents of the reports, which indicated an isolated area of lead contamination. The plaintiffs alleged that this failure caused their lender to withdraw its conditional commitment to provide financing for the purchase, which, in turn, forced the plaintiffs to cancel the transaction. The plaintiffs further alleged that the defendants negligently failed to incorporate necessary and proper language in the purchase and sale agreement, including a requirement that "time was of the essence."

The defendants denied the plaintiffs allegations of professional negligence and asserted certain special defenses. In addition, the law firm asserted, by way of a counterclaim, breach of contract and quantum meruit

claims against the plaintiffs for the recovery of the plaintiffs' unpaid account balance with the firm for attorney's fees and disbursed costs.

Proving allegations of legal malpractice usually requires expert testimony. *St. Onge, Stewart, Johnson & Reens, LLC* v. *Media Group, Inc.*, 84 Conn. App. 88, 95, 851 A.2d 1242, cert. denied, 271 Conn. 918, 859 A.2d 570 (2004). Accordingly, the plaintiffs filed a disclosure of expert witness. In that disclosure, filed June 4, 2001, the plaintiffs gave notice of their intent to offer at trial the opinion testimony of attorney Eric I. Beller. The plaintiffs indicated that Beller would testify that the defendants breached the applicable standard of care in one or more of the following four ways: (1) failing to reveal, inquire, investigate, review or otherwise consider the environmental reports pertinent to the subject transaction, or to make sure the plaintiffs received the pertinent documents prior to advising them regarding their decisions concerning the commercial property; (2) failing to disclose, advise, inform or communicate with the plaintiffs regarding the various implications or potential consequences of the environmental status or condition of the subject property; (3) failing to protect the plaintiffs' interests in the negotiation and execution of the purchase and sale agreement at issue, and failing to reveal or to discuss with the plaintiffs the implications and risks of the environmental clause and terms used in the purchase and sale agreement; and (4) failing to discover the inconsistencies between the environmental questionnaire answers and the environmental reports in the defendants' possession. In September, 2001, counsel for the defendants conducted a deposition of Beller that focused on his qualifications to render an expert opinion on the applicable standard of care and the specific reasons for his belief that the defendants breached that standard of care. Beller was unavailable to testify at trial, on April 10 and 11, 2003, and the

plaintiffs read to the jury virtually the entire transcript of his deposition without objection by the defendants.

On November 29, 2002, the plaintiffs filed a second "disclosure of expert witness," which gave notice that they anticipated offering at trial the opinion testimony of attorney Philip Sharfstein. The plaintiffs indicated that Sharfstein would testify that the defendants had deviated from the standard of care in precisely the same four specific ways that the plaintiffs had indicated Beller would testify. On February 14, 2003, the defendants filed a motion in limine to preclude the testimony of Sharfstein, asserting that he was not qualified to testify as an expert in the field of real estate law in Connecticut and that his testimony would be cumulative of Beller's. On April 15, 2003, after the transcript of Beller's deposition testimony had been read to the jury, the court, after a hearing, granted the defendants' motion in limine. In support of its ruling, the court found that Sharfstein was not qualified as an expert in real estate law in Connecticut and that his testimony was cumulative of Beller's, the plaintiffs' first expert.

On April 29, 2003, following a three week trial, the jury returned a verdict for the defendants on the plaintiffs' claim of professional negligence. The jury also returned a verdict in favor of the law firm on its counterclaim in the amount of $43,745.46. On May 9, 2003, the plaintiffs filed a motion to set aside the verdict and a motion for remittitur, which the court, following a hearing, denied. Judgment was rendered in accordance with the verdict,[1] plus costs in the amount of $971.78 in favor of the law firm and $325 in favor of Sharp. This appeal followed. Additional facts will be set forth as necessary.

---

[1] No argument on appeal is made by the plaintiffs as to the verdict for the law firm on the counterclaim or as to the amount of the verdict on the counterclaim.

## II

## PRECLUSION OF PLAINTIFFS' SECOND EXPERT WITNESS

The plaintiffs assert three claims, all of which are based on the court's preclusion of the opinion testimony of Sharfstein: (1) the court violated the plaintiffs' right to due process under the federal constitution because they have a constitutionally protected right to present witnesses in support of their claims and that the court denied them that right without reason; (2) the court improperly granted the defendants' motion in limine to preclude Sharfstein's testimony; and (3) the court improperly denied the plaintiffs' motion to set aside the verdict. Claims two and three, insofar as they each directly refer to the court's decision to preclude the opinion testimony of Sharfstein, will be addressed together.

We begin with the plaintiffs' due process claim. The plaintiffs claim that by precluding the opinion testimony of Sharfstein, the court violated their right to due process under the federal constitution. Specifically, the plaintiffs claim that they have a constitutionally protected right to present witnesses in support of their claims and that the court denied them that right without reason. We disagree.

First, there is no authority of which we are aware, and the plaintiffs do not cite any, that guarantees to civil litigants the right to present duplicative or cumulative expert opinion testimony to a jury. Second, it is axiomatic that the determination of whether a witness is qualified to testify as an expert is an evidentiary matter, usually unrelated to constitutional issues, which rests in the discretion of the trial court. *DiBella* v. *Widlitz*, 207 Conn. 194, 202, 541 A.2d 91 (1988). The plaintiffs are simply attempting to "put a constitutional tag on a nonconstitutional evidentiary ruling. . . . We pre-

viously have stated that the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved. . . . The trial court's exercise of discretion in admitting expert testimony is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *State* v. *Carneiro,* 76 Conn. App. 425, 430, 820 A.2d 1053, cert. denied, 264 Conn. 909, 826 A.2d 180, cert. denied, 540 U.S. 915, 124 S. Ct. 304, 157 L. Ed. 2d 208 (2003). The errors claimed by the plaintiffs in this case are simply evidentiary in nature. See id.

We next address the plaintiffs' claims that the court improperly granted the defendants' motion in limine to preclude Sharfstein's testimony and improperly denied the motion to set aside the verdict.

We begin with the applicable standard of review. The preclusion of testimony by a properly disclosed expert witness is an evidentiary ruling.[2] See *Young* v. *Rutkin,* 79 Conn. App. 355, 359, 830 A.2d 340, cert. denied, 266 Conn. 920, 835 A.2d 60 (2003). That decision will not be disturbed unless the court abused its discretion or unless the error is clear and involves a misconception of the law. *Going* v. *Pagani,* 172 Conn. 29, 35, 372 A.2d 516 (1976). An abuse of discretion means a ruling made on untenable grounds. *Whalen* v. *Ives,* 37 Conn. App. 7, 21, 654 A.2d 798, cert. denied, 233 Conn. 905, 657

---

[2] We note that the plaintiffs claim that the court "misapplied the law and [that] its decision is subject to plenary review." Specifically, the plaintiffs claim that the court did not find that Sharfstein was not qualified to testify as an expert, but rather, found that another lawyer would be a better witness. The plaintiffs conclude that the court created a legal distinction not permitted by Connecticut law. For the reasons we will set forth, we conclude that the court found, inter alia, that there was an insufficient factual basis for the opinion for which Sharfstein's testimony was proffered and that his testimony was duplicative of the deposition testimony already before the jury.

A.2d 645 (1995). "It is well settled that the trial court's evidentiary rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion." (Citation omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 368–69, 788 A.2d 496 (2002). "[Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and *reasonably could have reached the conclusion that it did.*" (Emphasis added; internal quotation marks omitted.) *Wasko* v. *Manella*, 87 Conn. App. 390, 394, 865 A.2d 1223 (2005). Even if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary error, but there also must be harm. *Rokus* v. *Bridgeport*, 191 Conn. 62, 70, 463 A.2d 252 (1983).

To be qualified as an expert witness in a legal malpractice matter, an attorney "must be found to possess special knowledge beyond that exhibited by every attorney simply as a result of membership in the legal profession." *Davis* v. *Margolis*, 215 Conn. 408, 417, 576 A.2d 489 (1990). The test is whether the proposed expert knows what the applicable standard of care is and can evaluate the defendant's conduct against that standard. *Fitzmaurice* v. *Flynn*, 167 Conn. 609, 617–18, 356 A.2d 887 (1975). Our Supreme Court has held that "an expert must show more than a 'casual familiarity' with the standards of the specialty in question." *Davis* v. *Margolis*, supra, 416. It is the knowledge that the witness possesses, not the source of that knowledge, that determines eligibility to provide expert testimony. Id., 417; *Young* v. *Rutkin*, supra, 79 Conn. App. 359. In order to render an expert opinion, the witness must be qualified to do so, and there must be a factual basis for the opinion. *State* v. *Asherman*, 193 Conn. 695, 716, 478

A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985).

The essential facts on which an expert opinion is based are an important consideration in determining the admissibility of the expert's opinion. See *Berndston* v. *Annino*, 177 Conn. 41, 46, 411 A.2d 36 (1979). "Where the factual basis of an opinion is challenged the question before the court is whether the uncertainties in the essential facts on which the opinion is predicated are such as to make an opinion based on them without substantial value." *State* v. *Asherman*, supra, 193 Conn. 716–17.

With those principles in mind, we turn to the court's granting of the defendants' motion in limine to preclude the testimony of Sharfstein. Outside the presence of the jury, Sharfstein testified that he has been an attorney since 1985, specializing in commercial real estate transactions, and was licensed to practice law in New York and New Jersey. Sharfstein also testified that he frequently is involved in real estate transactions in numerous states, including Connecticut. On the specific issue of his experience with Connecticut real estate transactions, Sharfstein stated that he has worked for developers in buying and developing commercial real estate, leasing to retail tenants, financing and joint venture work. Sharfstein also testified, however, that he has engaged local Connecticut counsel to "look over our shoulder" and "to advise on the intricacies of state law" in each Connecticut transaction with which he has been involved. Sharfstein further testified that although he has had the primary responsibility for negotiating loan documents, "Connecticut counsel . . . will then review those documents to assure that any specific Connecticut law provisions or remedy provisions are there to protect our client. Connecticut counsel will render the legal opinion, and Connecticut counsel will do the title work."

After testifying that he had an understanding of the standard of care applicable to attorneys within Connecticut regarding commercial real estate transactions, Sharfstein offered the specific factual foundation for that opinion. He testified that his opinion was based on his experience working on transactions in numerous states, including Connecticut, and that the issues in the present case were "similar, if not identical" to issues he would face in those other states. Specifically, Sharfstein testified that issues such as "commonly used contract terms relating to due diligence provisions, rights of termination, contingencies for financing, risks associated with lack of a termination right versus a seller option to do certain things . . . are issues that come up wherever real property is located, and I don't find anything that I've seen on those issues to be generic to Connecticut law." In fact, Sharfstein testified that nothing in his opinion regarding the standard of care applicable to commercial real estate transactions is based specifically on principles of Connecticut law.

On cross-examination, counsel for the defendants elicited testimony from Sharfstein that he is not licensed to practice law in Connecticut and has never applied for admission to the Connecticut bar. Sharfstein further conceded that he has never studied or researched specific issues involving Connecticut law, including environmental, real estate and conveyancing issues, and receives no literature or publications that cover Connecticut law. Sharfstein also testified that he has never testified as an expert witness in Connecticut and that he does not consider himself an expert on Connecticut law. Sharfstein further testified that in the past twenty years, he has been involved with five or fewer real estate transactions in Connecticut, and in each of those transactions he engaged local counsel to handle issues that were particularly state or local in nature, such as issues that would involve the department of environ-

mental protection, "because local counsel would have more familiarity with [its] rules and regulations . . . ." Finally, Sharfstein testified that he had no knowledge regarding whether Connecticut law differs from the law of other states on such specific issues as environmental rules and regulations, buyer remedies, specific contractual terminology, financing, conveyancing or how a Connecticut court would interpret "time is of the essence" clauses.

After hearing Sharfstein's testimony, the court granted the defendants' motion in limine to preclude the opinion testimony of Sharfstein. In support of its ruling, the court stated: "I'm going to not allow him to testify as an expert in this matter for two reasons. One is that we already have had expert testimony coming in [regarding] basically the same issue areas that have already been testified to through the earlier expert.[3] And two, it was pretty clear to me that there were aspects of [Connecticut law] which were part of this case about which he has no qualifications to testify, so I am not going to allow him to testify in that regard." The court continued: "[F]or the reasons I've already articulated on the record, one is I don't want to put any party in an adverse circumstance. I think at the very least the bases have been covered with Mr. Beller's testimony. He covered, in my estimation, both commercial transactions from a Connecticut lawyer's perspective and environmental issues from a Connecticut lawyer's perspective.

"Attorney Sharfstein, who obviously is competent in the practice in the states with which he's licensed, I don't think is the appropriate person to have testify for

---

[3] The deposition testimony of Beller, the previously disclosed expert, was introduced by the plaintiffs while the defendants' motion in limine to preclude Sharfstein's testimony was pending, but before the court's ruling on that motion. The introduction of Beller's deposition testimony, therefore, could be considered a strategic choice by the plaintiffs.

two reasons. One is it's a duplication of what [has] already been testified to. It may overemphasize an aspect of this, and I don't think that's fair to the other side. And two, I think there are certain aspects of this case about which a Connecticut lawyer should—would be more qualified to testify. And for that reason, I'm not going to allow him to testify . . . ."[4]

Our review of the record reveals that the court precluded the opinion testimony for two reasons. The court reasonably concluded that the probative value of Sharfstein's testimony was outweighed by its potential for prejudice because it would be duplicative of testimony presented to the jury through the deposition transcript of Beller. Evidence may be precluded if its probative value is outweighed by the "needless presentation of cumulative evidence." Conn. Code Evid. § 4-3. Evidence is cumulative if it multiplies witnesses or documentary matter to any one or more facts that were the subject of previous proof. See *Levine* v. *Union & New Haven Trust Co.*, 127 Conn. 435, 440, 17 A.2d 500 (1941). The court's power in that area is discretionary. *State* v. *Lemoine*, 6 Conn. App. 334, 338, 505 A.2d 725 (1986). In precluding evidence solely because it is cumulative, however, the court should exercise care to avoid precluding evidence merely because of an overlap with the evidence previously admitted. *State* v. *Zoravali*, 34 Conn. App. 428, 440, 641 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994). The test for whether a ruling precluding evidence on the ground that the evidence would be cumulative is whether there has been an abuse of discretion. *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 124–25, 788 A.2d 83 (2002).

---

[1] At the hearing on the plaintiffs' motion to set aside the verdict on July 2, 2003, the court reiterated its grounds for precluding Sharfstein's testimony, stating that "my ruling was not limited to [Sharfstein's] lack of knowledge of transferring. It was an overall impression about his inability to accurately testify on the standard of care based upon his lack of familiarity with Connecticut practice."

If there will be two expert witnesses, or two different disclosures of the use of the same expert, it is prudent to notify the court as to whether the testimony of the second expert will be supplemental to or will supersede the testimony of the witness first disclosed. Id., 122–25; D. Faulkner & S. Graves, Connecticut Trial Evidence Notebook (2d Ed. 2004) E-34. Otherwise, the proposed testimony could be deemed duplicative.

In the present case, the plaintiffs indicated that their second expert witness would testify that the defendants breached the applicable standard of care in the same four specific ways about which their first expert, Beller, had testified. In fact, the plaintiffs' second disclosure of an expert witness was substantially identical to their first disclosure of an expert witness. The plaintiffs, thus, indicated that the second offer of expert opinion testimony by Sharfstein would be duplicative of the opinion of Beller. Therefore, Sharfstein's testimony would not merely have overlapped with the deposition testimony of Beller, which the plaintiffs read to the jury over the course of two days without objection by the defendants, but it would have repeated precisely the same substantive points concerning the standard of care and the ways in which the defendants allegedly breached that standard. The court reasonably concluded that because Sharfstein's testimony would be "a duplication of what has already been testified to . . . [i]t may overemphasize an aspect of this [case], and I don't think that is fair to the other side." Evidence, although relevant, may be precluded if the court determines that the prejudicial effect of the evidence outweighs its probative value. *Berry* v. *Loiseau*, 223 Conn. 786, 804, 614 A.2d 414 (1992). We do not conclude that the preclusion of Sharfstein's testimony was an abuse of discretion, particularly when viewed in combination with the court's additional reason for its preclusion.

The court also found that this case involved issues of Connecticut law about which Sharfstein was not qualified to opine. The plaintiffs' attempt to characterize the court's ruling as evidencing a misconception of the law regarding the admission of expert opinion testimony cannot succeed. The court specifically found that issues germane to Connecticut law were implicated in this case. In order to render an expert opinion on the applicable standard of care, Sharfstein had to be qualified to do so and there had to be a factual basis for the opinion. See *State* v. *Asherman,* supra, 193 Conn. 716. There is ample support in the record for the court's conclusion that there was an insufficient factual basis for Sharfstein's opinion regarding the applicable standard of care and whether the defendants breached that standard. Sharfstein, himself, conceded that he did not know whether Connecticut law differs from the law of other states, such as New York and New Jersey, where he is licensed to practice law, on such specific issues as environmental rules and regulations, buyer remedies, specific contractual terminology, financing, conveyancing or how a Connecticut court would interpret "time is of the essence" clauses. Sharfstein further testified that his opinion was not based on Connecticut law at all, but on "national standards."

The plaintiffs provided no foundation for Sharfstein's opinion that the standard of care applicable in this case is the same, or even substantially the same, as the relevant standard of care in jurisdictions in which Sharfstein had more experience. Cf. *Katsetos* v. *Nolan,* 170 Conn. 637, 646, 368 A.2d 172 (1976) (physician familiar with standard of care in New York qualified to testify regarding applicable standard of care in Stamford when previous testimony established that standards in both areas were same). Although Sharfstein did testify that he was familiar with the applicable standard of care, the factual basis for that familiarity was lacking. In the

past twenty years, he was involved with only five or fewer real estate transactions in Connecticut, and in each such transaction he engaged local counsel to "look over his shoulder" and handle issues specific to Connecticut law. At most, Sharfstein showed only a casual familiarity with the standards of the specialty in question. See *Davis* v. *Margolis*, supra, 215 Conn. 416.

We conclude that the court did not abuse its discretion in granting the defendants' motion in limine to preclude the opinion testimony of Sharfstein and, therefore, properly denied the plaintiffs' motion to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.