******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DISCIPLINARY COUNSEL *v.* JUDITH B. SPORN
(AC 38387)

Lavine, Beach and Keller, Js.*

*Argued October 27, 2016—officially released March 7, 2017*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Heller, J.)

*James F. Sullivan*, for the appellant (respondent).

*Karyl L. Carrasquilla*, chief disciplinary counsel, for
the appellee (petitioner).

*Opinion*

KELLER, J. The respondent, Judith B. Sporn, appeals from the judgment of the trial court suspending her from the practice of law for violating several Rules of Professional Conduct and Practice Book § 2-27. She claims on appeal that the court abused its discretion by: (1) granting the motion in limine of the petitioner, Disciplinary Counsel, seeking to preclude proposed expert testimony on the subject of immigration law; and (2) imposing a two year suspension. We affirm the judgment of the court.

This appeal arises from three grievance actions commenced against the respondent in 2013 and 2014. The following facts underlying these actions, as found by the court, are pertinent to our discussion.

The first grievance action concerned the respondent's representation of Line Christoffersen. Christoffersen, a citizen of Denmark who came to the United States on a J-1 (exchange) visa, retained the respondent in January, 2010, to assist in filing an application to become a United States permanent resident, also known as a green card application. Christoffersen paid the respondent $1365 for this task. The respondent did not provide Christoffersen with a written fee agreement, nor did she place the fee into a separate client trust account.

Christoffersen sought to apply for the green card on the basis of her marriage to a United States citizen. In the months after she retained the respondent, Christoffersen attempted to contact her to inquire about the status of her application. The respondent, however, did not return her calls. In September, 2010, Christoffersen and her husband separated. Because of this, Christoffersen went to the respondent's office that same month to instruct her to stop the application process. As of the time of that meeting, the respondent had yet to begin work on Christoffersen's green card application.

The respondent then suggested that Christoffersen file a petition for lawful resident status as a battered or abused spouse under the Violence Against Women Act, also known as an I-360 petition. See 8 U.S.C. §§ 1101 (a) (51) (A), 1154 (a) (iii) (2012). Once approved, an I-360 petition permits the battered or abused spouse to apply to adjust his or her status to that of permanent resident. See 8 U.S.C. § 1255 (a) (2012). The basis of the I-360 petition in Christoffersen's case was that her husband was cruel and abusive to her. Christoffersen did not pay an additional fee for this task. The respondent did not provide Christoffersen with a written fee agreement relating to this representation.

During the following months, Christoffersen attempted to contact the respondent to inquire about the I-360 petition, but the respondent did not respond. The respondent did not file the I-360 petition until March, 2012. Christoffersen terminated the representa-

tion in the summer or at the end of 2012. Christoffersen's I-360 petition was approved in April, 2013. At the time of the trial underlying the present appeal, however, Christoffersen had yet to apply to adjust her status to that of permanent resident. She testified that she did not want to pursue such status because she believed that she did not qualify as an abused spouse and would be deceiving immigration authorities if she did. At the time of the trial, Christoffersen did not have permanent resident status.

The second and third grievance actions commenced against the respondent concerned her representation of Valent Kolami and Adrian Emin, brothers-in-law from Albania who originally entered the United States on visitor's visas around 2000. Kolami and Emin retained the respondent in 2003 to appeal to the Board of Immigration Appeals (BIA) following its denial of their applications for political asylum.[1] Each paid the respondent a $2500 fee. The respondent did not provide either of them with a written fee agreement, nor did she place the fees into a separate client trust account.

The respondent filed appellate briefs before the BIA for Kolami and Emin. The BIA, however, returned the Kolami brief because the respondent certified service to Hartford instead of to New York. In the meantime, the filing deadline for the brief had passed. The respondent therefore moved to late file it. According to the respondent's testimony, she did not receive notice of the disposition of the appeals, nor did she follow up in order to ascertain those dispositions, until 2011. Both Kolami and Emin went to the respondent's office frequently between 2003 and 2011 to inquire about the status of their appeals. Each time the respondent told them that she was still awaiting decisions.

In August, 2011, agents from United States Immigration and Customs Enforcement (ICE) detained Kolami and Emin. The respondent learned that the appeals to the BIA had in fact been dismissed in 2004—Emin's on the merits, and Kolami's because the brief was untimely filed. The respondent filed stays of removal for Kolami and Emin, a task for which each paid the respondent an additional $2500. The respondent did not provide either of them with a written fee agreement. The respondent did not place the fees into a separate client trust account. The stays, and two more that the respondent sought subsequently, were granted. When the fourth set of stays was denied, the respondent told Kolami and Emin that she could no longer represent them and referred them to a colleague. In April, 2012, Kolami and Emin were again detained by ICE. This time, however, Kolami was held in detention for eighteen months, and Emin for sixteen months.

Further, the court found that the respondent did not maintain a registered IOLTA account[2] until the spring of 2015, despite the fact that she completed a continuing

legal education program in ethics in 2012 pursuant to an order arising out of a previous grievance action.

After a three day trial, the court, *Heller, J.*, for reasons set forth more fully below, concluded that the respondent had violated rules 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.5 (b) (written fee agreements), and 1.15 (b), (d) and (i) (safekeeping of client property) of the Rules of Professional Conduct, as well as Practice Book § 2-27 (clients' funds). After considering the factors set forth in the American Bar Association's Standards for Imposing Lawyer Sanctions (ABA factors); see *Burton* v. *Mottolese*, 267 Conn. 1, 55–56, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004); the court on September 18, 2015, suspended the respondent from the practice of law for two years. Additional facts will be set forth as necessary.

I

The respondent first claims that the court abused its discretion by granting the petitioner's motion in limine seeking to preclude proposed expert testimony on the subject of immigration law. We disagree.

The following additional evidence is relevant to our disposition of this claim. Prior to trial, the respondent filed a memorandum with the court in which she argued for the admission of expert testimony on the subject of immigration law. The memorandum read in part as follows: "The [respondent] has disclosed Crescenzo Deluca, a skilled and highly regarded immigration attorney. Attorney Deluca will not be asked to opine on any ultimate issues such as whether there was a violation of any Rule of Professional Conduct. Rather, he will be providing assistance to the court regarding matters outside this court's ken, namely, the customs and practices in the highly specialized area of immigration law dealing with petitions filed under the Violence Against Women Act and the likelihood of success of the Kolami and Emin deportation cases. Attorney Deluca has been practicing immigration law for over forty years. The cases involving Kolami and Emin are deportation cases involving Albanians and are predicated on an understanding of the circumstances in Albania. There is no attorney in Connecticut who has handled more cases involving Albanians than Attorney Deluca.

"It is the [counsel for the respondent's] understanding, based on his due diligence, including speaking to one of the former partners of the present trial judge, that although while she was in private practice she was known as a skilled and well respected litigator in corporate and commercial matters, she did not do immigration work.[3] As [the respondent] and Attorney Deluca can attest (as well as the [counsel for the respondent] having represented immigration attorneys in the past) this is a highly specialized area of the law. Lay

people and most judges do not have the training and experience to know of the custom and practices in various areas of immigration law. . . . The court should have some guidance as to the standards for an I-360 Application, what an I-797 Notice of Action[4] means, what the standards are for various motions to reopen, the standards for appealing decisions on such motions, and the unique procedures that apply to these applications, motions and appeals. A qualified immigration attorney expert will assist with the court in understanding these unique and specialized proceedings." (Citations omitted; footnotes added.) The respondent argued much the same in an oral offer of proof before the court.

The petitioner filed a motion in limine seeking to preclude the expert testimony, arguing that an understanding of substantive immigration law was not necessary to determine whether the respondent had violated the Rules of Professional Conduct. The court granted the petitioner's motion in limine, stating in part: "I think the federal law, federal procedures, procedures in the Department of Homeland Security and how immigration matters are handled, I think are all certainly within the purview of this court."

The following legal principles guide our analysis. "Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . [T]o render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Internal quotation marks omitted.) *Weaver* v. *McKnight*, 313 Conn. 393, 405–406, 97 A.3d 920 (2014).

"The preclusion of testimony by a properly disclosed expert witness is an evidentiary ruling. . . . That decision will not be disturbed unless the court abused its discretion or unless the error is clear and involves a misconception of the law. . . . An abuse of discretion means a ruling made on untenable grounds. . . . It is well settled that the trial court's evidentiary rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . . Even if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary error, but there also must be harm." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Glaser* v. *Pullman & Comley, LLC*, 88 Conn.

App. 615, 622–23, 871 A.2d 392 (2005).

On appeal, the respondent essentially makes three arguments in support of her claim that the court abused its discretion in granting the motion in limine. First, the respondent argues that the expert testimony would have provided evidence of the standard of care among attorneys as to the particular immigration benefits sought by Christoffersen, Kolami, and Emin, which the respondent argues was material to the issue of her alleged lack of competence and diligence in those matters.[5] Second, the respondent contends that the expert testimony would have assisted in establishing that the harm that befell Christoffersen, Kolami, and Emin either was nonexistent or would have occurred even absent the alleged misconduct. Third, the respondent argues that the testimony was needed to counter expert testimony given by another immigration lawyer in the underlying grievance proceedings before the Statewide Grievance Committee. We are not persuaded.

We find no merit in the respondent's first argument that the court abused its discretion because the expert testimony would have provided evidence of the standard of care among attorneys as to the particular immigration benefits sought by the aggrieved clients, which the respondent contends was material to the issue of her alleged lack of competence and diligence in those matters. As regards the Kolami and Emin cases, an understanding of substantive immigration law was not necessarily germane to the issue of whether the respondent violated the Rules of Professional Conduct pertaining to competence and diligence. In the Kolami case, the respondent simply failed to timely file a brief, resulting in summary dismissal. In both matters, the respondent failed to timely ascertain the dispositions of the cases, and failed to timely communicate those dispositions to the clients. The court was justified in concluding that an understanding of substantive immigration law would not assist in rendering judgment as to those issues. As to Christoffersen, the principal issue was whether the respondent failed in her ethical obligation to perform competently and diligently in filing Christoffersen's green card application. See part II of this opinion. Expert testimony concerning substantive immigration law was not necessarily useful to such inquiry. We therefore conclude that the court did not abuse its discretion in precluding the expert testimony on this ground.

Likewise, we are not persuaded by the respondent's second argument that the court abused its discretion because the expert testimony would have assisted in showing that the harm that befell Christoffersen, Kolami, and Emin either was nonexistent or would have occurred even in the absence of the alleged ethical violations. In part II of this opinion, we discuss the court's factual findings that the respondent's miscon-

duct harmed Christoffersen, Kolami, and Emin. We also conclude there that some of those findings are unfounded, but that the court nevertheless did not abuse its discretion by suspending the respondent for two years. Thus, even if we were to determine here that the court abused its discretion by precluding the expert testimony because such testimony would have shown that the respondent's misconduct did not harm the aggrieved clients,[6] for the reasons set forth in part II of this opinion, we conclude that any such error was harmless. See *Glaser* v. *Pullman & Comley, LLC*, supra, 88 Conn. App. 623 ("there also must be harm" not only evidentiary error).

Finally, we must reject the respondent's contention that the expert testimony was needed to counter expert testimony given by another immigration lawyer in the underlying grievance proceedings before the Statewide Grievance Committee. This argument is unsupported by the record, which contains no transcript of any proceeding before the Statewide Grievance Committee. Accordingly, this argument fails.

II

The respondent next claims that the court abused its discretion in imposing a two year suspension. More specifically, the respondent argues that the court's finding that Christoffersen, Kolami, and Emin suffered harm as a result of the respondent's conduct is clearly erroneous and that, but for that finding, the court's sanction would have been less severe. We agree that some of the court's findings in this regard do not find adequate support in the record. See *Commissioner of Transportation* v. *Towpath Associates*, 255 Conn. 529, 546, 554, 767 A.2d 1169 (2001) (rejecting trial court's factual determination where such determination was "nothing more than speculation" and ordering new trial). We conclude, nevertheless, that based on the other findings relied upon by the court in sanctioning the respondent, this is not a case in which "an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Spirer*, 247 Conn. 762, 781, 725 A.2d 948 (1999).

The following additional facts are relevant to our discussion. As previously discussed, after concluding that the respondent violated several Rules of Professional Conduct and Practice Book § 2-27, the court considered the respondent's conduct in light of the ABA factors in determining the appropriate sanction.[7] One such factor is "the potential or actual injury stemming from the attorney's misconduct . . . ." *Burton* v. *Mottolese*, supra, 267 Conn. 55. In analyzing this factor, the court concluded: "The injury resulting from an attorney's misconduct is defined by the type of ethical duty that the attorney has violated and the extent of the actual or potential harm. . . . The respondent's failure

to represent her clients competently and diligently caused them significant injury. [Christoffersen] was unable to obtain a family based green card. [Kolami] and [Emin] were arrested and detained for eighteen and sixteen months, respectively. They were deprived of their livelihood, their families, and their liberty. They were forced to incur legal expenses to retain new counsel." (Citation omitted.)

The following legal principles govern our disposition of this claim. A trial court has "inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 678, 646 A.2d 781 (1994). "Disciplinary proceedings are for the purpose of preserving the courts from the official ministration of persons unfit to practice in them. . . . The proceeding to disbar [or suspend] an attorney is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court." (Internal quotation marks omitted.) *Chief Disciplinary Counsel* v. *Zelotes*, 152 Conn. App. 380, 385, 98 A.3d 852, cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014).

"[O]ur inquiry is limited to whether the trial court abused its discretion in imposing [the sanction that it did]. The scope of review by this court on a claim that the trial court abused its discretion is well settled. [E]very reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Spirer*, supra, 247 Conn. 781; see also *Statewide Grievance Committee* v. *Glass*, 46 Conn. App. 472, 480, 699 A.2d 1058 (1997) (Abuse of discretion is that which is "clearly against logic and effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; an improvident exercise of discretion; an error of law. . . . A discretion exercised to an end or purpose not justified by and clearly against reason and evidence. Unreasonable departure from considered precedents and settled judicial custom, constituting error of law. . . . A judgment or decision by an administrative agency or judge which has no foundation in fact or in law." [Internal quotation marks omitted.]).

"[W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is

clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Palmer*, 88 Conn. App. 330, 336, 869 A.2d 666 (2005). The respondent argues that the court's findings that Christoffersen, Kolami, and Emin were harmed as a result of her misconduct are clearly erroneous because (1) there was no showing that Christoffersen would have ultimately been successful with respect to her application for permanent residency based on her marriage to a United States citizen, and her I-360 petition, from which one can obtain permanent residency by filing an additional application, was successful; and (2) there was no evidence presented that Kolami and Emin would not have been in the same legal position with respect to their status, and would not have been detained, in the absence of the respondent's misconduct.

As to the harm that befell Christoffersen, the court concluded that she "was unable to obtain a family based green card." We deem this a fair assessment. To be sure, whether Christoffersen would have ultimately been successful in obtaining a marriage based green card in the absence of the respondent's misconduct is an open question. The key point, however, is that the respondent, through her inaction, unilaterally deprived Christoffersen of the *opportunity* to obtain that particular benefit.

We disagree with the respondent's contention that the court's finding of harm in Christoffersen's case was erroneous because Christoffersen could have—fairly easily, the respondent suggests—obtained permanent resident status by virtue of her approved I-360 petition. Although the I-360 petition may have provided Christoffersen with a viable alternative for obtaining permanent resident status, she did not originally retain the respondent to file such a petition. Once the I-360 petition was approved, Christoffersen was, reasonably or not, uncomfortable pursuing permanent resident status by virtue of that petition. Christoffersen was therefore harmed because she did not receive the service for which she paid the respondent—that is, to file a marriage based green card application and, impliedly, to do so within a reasonable time.

As to the harm that befell Kolami and Emin, the court concluded: "Kolami and [Emin] were arrested and detained for eighteen and sixteen months, respectively. They were deprived of their livelihood, their families, and their liberty. They were forced to incur legal expenses to retain new counsel." Although it is undisputed that Kolami and Emin were detained by immigration authorities and suffered many attendant hardships, we conclude that the court's finding that the respondent

*caused* Kolami and Emin such harm is unduly speculative. As previously noted, the respondent untimely filed Kolami's appeal to the BIA, resulting in summary dismissal. Even if the appeal was timely filed, however, there was no evidence presented to support a finding that Kolami would have been successful on such appeal. In point of fact, Michael DiRaimondo, an attorney whom Kolami retained after the respondent terminated her representation of him, testified for the petitioner that he filed an ineffective assistance of counsel motion with the BIA for Kolami. DiRaimondo further testified that the BIA had determined that, although there was ineffective assistance by the respondent, there was no prejudice to Kolami.

We also conclude that there was insufficient evidence to support the court's inference that but for the respondent's misconduct, Kolami and Emin would not have been detained for eighteen and sixteen months, respectively, and that they would not have had to retain, and pay for, new counsel. Assuming that Kolami's appeal to the BIA had been filed correctly and subsequently denied on the merits, both Kolami and Emin would have, presumably, been without legal status, and therefore subject to detainment and, ultimately, deportation. See M. Scaperlanda, Federal Judicial Center, "Immigration Law: A Primer," (2009), p. 73, available at http://permanent.access.gpo.gov/lps121690/immlaw09.pdf (last visited February 24, 2017) (copy contained in the file of this case in the Appellate Court clerk's office) ("[a]liens are deportable who . . . have violated the terms of their nonimmigrant status [or] have violated the conditions of admission"). For all that the record discloses, Kolami and Emin may have been subject to the same periods of detention even absent the respondent's misconduct. As to the finding that Kolami and Emin were harmed because they eventually had to retain another lawyer, again, the record is silent as to whether this occurred as a *result* of the respondent's ethical misconduct, or was simply an event that would have happened regardless of the respondent's conduct. After all, it is not uncommon for attorneys to refer clients to other attorneys in order for those clients to avail themselves of different legal specializations. Of course, "[i]n reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached." (Internal quotation marks omitted.) *Gianetti* v. *Norwalk Hospital*, 304 Conn. 754, 766, 43 A.3d 567 (2012). But where, as here, "the record fails to provide an adequate foundation to support a finding that it was anything other than 'imaginative or speculative' [that an event would have occurred]," we must reject that finding. *Commissioner of Transportation* v. *Towpath Associates*, supra, 255 Conn. 548. We therefore reject as unfounded the court's finding that Kolami and Emin were harmed by the respondent in the ways just

described.

Nevertheless, "[i]n other appeals involving civil matters, this court has observed that an improper finding of fact by a trial court does not automatically warrant a judgment of reversal, but that an appellant must demonstrate that such improper finding was not harmless in light of the court's other findings of fact. The test becomes whether the improper finding undermines appellate confidence in the court's fact-finding process as a whole. This doctrine was set forth in *DiNapoli* v. *Doudera*, 28 Conn. App. 108, 112, 609 A.2d 1061 (1992), in which this court, having discussed the clearly erroneous standard of review, stated: 'Where . . . some of the facts found are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's fact finding process, a new hearing is required.' " *State* v. *Corringham*, 155 Conn. App. 830, 843–44, 110 A.3d 535 (2015).

Although the court erred in making some of the preceding factual findings as to the harm that befell Kolami and Emin, we conclude, nonetheless, that its decision to suspend the respondent for two years was not manifestly unjust or an abuse of discretion. *Statewide Grievance Committee* v. *Spirer*, supra, 247 Conn. 781. We so conclude because the court's findings as to the other three ABA factors are adequately supported by the record and weigh heavily against the respondent. See *State* v. *Corringham*, supra, 155 Conn. App. 844.

In regard to the first factor—the nature of the duty violated—the court concluded that the rules that the respondent violated constitute an attorney's "fundamental obligations" toward a client. As to the second factor—the attorney's mental state—the court found that the respondent "was admittedly negligent in her representation of [Christoffersen, Kolami, and Emin], and arguably *well aware* that she was not acting diligently or promptly or keeping them informed as to the status of their matters." (Emphasis added.) The fourth ABA factor prescribes consideration of enumerated aggravating and mitigating factors. The court concluded in part: "There are several aggravating factors here. The respondent is an experienced member of the bar who has been handling immigration matters since 1982. She is well aware of the vulnerability of clients such as [Kolami] and [Emin], who have limited education and are not fluent in English. The respondent has previously been disciplined for her violation of the Rules of Professional Conduct. The misconduct at issue in this disciplinary proceeding cannot be viewed in isolation from the respondent's previous violations, thus demonstrating a pattern of misconduct. She unreasonably assumed that the Rules of Professional Conduct regard-

ing written fee agreements and client trust accounts did not apply to her practice. The respondent appears to show little remorse for the circumstances of [Kolami] and [Emin], stating only that 'some unfortunate things happened.' When asked by her counsel if she had learned a lesson from the Kolami appeal, she said, 'I will not take an appeal on a case where I wasn't in court below.' She does not acknowledge [Christoffersen's] concern that she would be committing perjury if she applied for adjustment of status. And last, but certainly not least, the respondent inexplicably did not open an IOLTA account until earlier this year, about two months prior to the presentment hearing, despite completing a continuing legal education program in legal ethics in 2012." (Footnotes omitted.)

The court found the mitigating factors presented by the respondent to be unpersuasive. The court reasoned: "[The respondent's] 2012 back surgery occurred after the events that gave rise to this disciplinary proceeding. Her reputation with her colleagues and the immigration authorities in Hartford, her commitment to preventing the unlicensed practice of law, [and] her dedication to providing volunteer legal services to victims of domestic violence, while commendable, do not excuse her failure to represent [Christoffersen, Kolami, and Emin] competently and diligently. Immigration law may well be a difficult and complicated area of practice, as the respondent and [another immigration attorney fact witness] testified, but that is irrelevant here. The respondent is charged with violating every attorney's fundamental responsibilities to a client: to represent the client competently and diligently, to keep the client reasonably informed about the status of the matter, to advise the client in writing of the fees and expenses for which the client will be responsible, to communicate with the client in writing regarding the scope of the representation, and to safeguard the client's funds in a client trust account."[8]

The court, in imposing the two year suspension, concluded in part: "The [petitioner] recommends in its post-hearing memorandum that the court impose a five year period of suspension as a sanction for the respondent's violation of the Rules of Professional Conduct and Practice Book § 2-27. The respondent argues in her postpresentment brief that a suspension will irreparably harm her practice and her family and deprive the immigration bar community of a productive and caring member. Her clients, many of whom are indigent, will also suffer. The respondent asks that the sanction be limited to additional continuing legal education in ethics and law office management, the requirement that she consult on a quarterly basis with a bookkeeper recommended to her by the Statewide Grievance Committee, and that she regularly consult with another attorney . . . about best practices; in the alternative, the respondent requests that she be provided a reprimand in addition

to the above conditions. She argues that any period of suspension is unnecessary. The court does not agree.

"As the [petitioner] points out, conditions have previously been imposed as a sanction on the respondent, apparently to little or no effect. The court finds that a period of suspension is appropriate here."

In light of the whole of the court's findings, we conclude that it did not abuse its discretion in imposing a two year suspension on the respondent. As the court found, the respondent's ethical misconduct in the instant case is part of an established pattern. See generally *Statewide Grievance Committee* v. *Shluger*, supra, 230 Conn. 680 ("[o]n the basis of the serious and repeated nature of the defendant's misconduct, the trial court could reasonably have concluded that he was unfit to practice law and, consequently, that a sanction more severe than a reprimand was necessary. Indeed, the [instant misconduct] occurred after he had already received at least one reprimand, a sanction that, regrettably, proved insufficient to deter the defendant from future wrongdoing."). The court also determined that the respondent was "arguably well aware" that she was not diligently pursuing her clients' cases or apprising them as to the status of those cases. The court noted that the respondent knew that two of those clients— Kolami and Emin—were vulnerable because of their limited education and English skills. Yet, for the better part of a decade, the respondent failed to inform Kolami and Emin that their cases had been dismissed by immigration authorities, despite the fact that the two frequently contacted her to inquire about the status of the cases. "[T]he fiduciary relationship between an attorney and a client requires absolute perfect candor, openness and honesty, and the absence of any concealment or deception." (Internal quotation marks omitted.) *Disciplinary Counsel* v. *Smigelski*, 124 Conn. App. 81, 89–90, 4 A.3d 336 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1004, cert. denied, 565 U.S. 818, 132 S. Ct. 101, 181 L. Ed. 2d 28 (2011). Finally, the court appeared to take particular note of the respondent's "inexplicabl[e]" failure to properly safeguard her clients' property despite having completed a continuing legal education program in legal ethics in 2012. On the basis of the foregoing findings, we cannot conclude that the court's sanction was an abuse of discretion.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The respondent represented both Valent Kolami and his wife, Gentiana Kolami, in their appeals to the BIA. Both also filed grievances against the respondent. For purposes of the present appeal, however, we only refer to Valent Kolami.

[2] An IOLTA account is "an interest- or dividend-bearing account established by a lawyer or law firm for clients' funds . . . ." Rules of Professional Conduct 1.15 (a) (5).

[3] The court confirmed at trial that this statement was correct.

[4] An I-797 Notice of Action is "[i]ssued when an application or petition is approved." U.S. Citizenship and Immigration Services, "Form I-797: Types and Functions," available at https://www.uscis.gov/i-797-info (last visited February 24, 2017).

[5] The respondent also asserts that expert testimony would have assisted in establishing that her conduct on behalf of the aggrieved clients was in fact the result of considered strategy. Because we view this argument as materially the same as the one just described in the body of this opinion, our resolution of the latter entails resolution of the former.

[6] We do not decide whether the court abused its discretion by precluding the expert testimony on this ground.

[7] In Connecticut, use of the ABA factors in determining a sanction is permissive, not mandatory. *Burton* v. *Mottolese*, supra, 267 Conn. 55 n.50.

[8] We briefly address the respondent's argument that the court erred in its analysis of the aggravating and mitigating factors. We have reviewed the record, including the trial transcripts and exhibits, and conclude that the court's findings as to the aggravating and mitigating factors are adequately supported by the evidence.

[9] We observe that the respondent failed to present any persuasive authority that a suspension of two years, rather than a lesser period, was excessive or disproportionate in light of all of the circumstances of this case.